[Civ. No. 17248.   First Dist., Div. Two.   June 19, 1956.]

JOSEPH MALLECK, Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Edward L. Cragen for Petitioner.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

KAUFMAN, J.—This is a petition for writ of prohibition. The petitioner who has been charged in an information with violation of Penal Code, section 245 (assault with a

deadly weapon) seeks the writ on the ground that he was committed without reasonable or probable cause. If this contention is correct a writ of prohibition is a proper remedy. (Pen. Code, § 999a.)

The petitioner first argues that no evidence was introduced at the preliminary examination to establish that a crime had been committed. Nathan A. Thornton, the alleged victim of the assault, testified that while on duty as a sentry at the Marine Supply Forwarding Depot at San Francisco he was "shot at three times." He testified he "heard the report of the rifle and then the zing of the bullet as it came past me," he "heard another report of a bullet fired and the bullet zing passed me," and "another shot was fired and a bullet zinged past."

Petitioner states "there have been no cases holding an assault can be established by circumstantial evidence without a witness to the assault who can identify the defendant as the perpetrator or without a wound from which the assault can be inferred." For this proposition he cites cases where either one or the other was present. No cases have been found where a conviction for an assault has been upheld where there either was no witness identifying the perpetrator or a wound, but no cases have been found where a conviction was reversed on this ground. Even if the judgment of conviction would be reversed if the only evidence introduced at the trial was that introduced at the preliminary examination, the standard under Penal Code, section 995 of "reasonable or probable cause" is not the same as that required for conviction. ■ " 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [*People* v. *Kilvington*, 104 Cal. 86 (37 P. 799, 43 Am.St.Rep. 73) ; *People* v. *Smith*, 141 Cal.App.2d 399, 402 (296 P.2d 913)] 'Reasonable or probable cause' may exist although there may be some room for doubt." (*People* v. *Nagle* (1944), 25 Cal.2d 216, 222 [153 P.2d 344].) ■ The testimony at the preliminary examination seems sufficient to make it probable that Thornton was assaulted with a deadly weapon.

■ However, there is the question as to what evidence, if any, was produced to connect the petitioner with the crime. The petitioner is a night watchman at the Ace Auto Wrecking Yard which adjoins the depot on the east. The Southern

Pacific has a right of way and raised tracks immediately to the east of the depot and the wrecking yard is immediately beyond that. Thornton was asked whether he could tell where the shot came from and answered "Well, from somewhere along the railroad tracks, as near as I could tell." The third shot he said came "From approximately the same general area, I suppose." Thomas A. Morris, a San Francisco police officer, testified that on the same evening, while investigating the incident, he climbed on the railroad tracks. "And on arriving at the top I flashed my flashlight around to see if I could spot anything or anybody and I heard a shot and I hear the wind of a bullet." "After the shot I fell to the ground and Sergeant Sweeting, he came up behind me and he went down on his knee and I, with the flashlight in my hand, I raised it over my head about a minute and a half, maybe two minutes when I spotted a man in the Ace Auto Wrecking Yard." "Q. Did you get a good look at the man? A. I didn't get a good look, enough to identify him, while I was approximately 125, maybe 100 feet away from him. Q. Was anything or anybody with the man that you saw? A. There was two dogs. Q. Was there a response when you said 'Stop shooting'? A. Was there a response—— I don't recall at the time. Q. Was there any more shooting? A. No, sir." Morris also testified that he could not tell where the shot which he heard came from.

Thornton said the shots sounded like they came from a .22. Inspector Frank J. Van Dervort of the San Francisco Police Department testified that he found in the shack petitioner used in the auto wrecking yard an empty cardboard carton marked "Remington Hi Speed Klean Bore .22 Long 50 Rim Fire Cartridges" and two empty cartridge cases with "High speed" imprinted on the casing. The petitioner denied any knowledge of either. Petitioner also denied having a gun or firing a gun. This is all the evidence introduced at the preliminary examination which might be said to connect the petitioner with the assaults.

Even assuming that the man whom Officer Morris saw on the night of the 15th was petitioner, this evidence is insufficient to establish reasonable and probable cause that the petitioner committed the crimes. The petitioner was a night watchman at the Ace Auto Wrecking Yard. The yard was adjacent to the supply depot and his job required him to be in the vicinity of the crime. It is only natural that he would be out and stirring if he heard shots fired in the

vicinity. There was no evidence introduced that petitioner had a gun or access to a gun. Assuming that Corporal Thornton accurately surmised from which direction the bullets came, there was no evidence that the only way to get to the tracks was through the Ace Auto Wrecking Yard. There was at least one other metal salvage yard east of the depot and to the north of the Ace Auto Wrecking Yard from which the shot might have come.

The only thing which distinguishes the petitioner from many other possible suspects is that he was in the vicinity of the crime when it was committed and had within his possession cartridge casings which may possibly have been used in the commission of the crime. The latter may have come into his possession for any number of reasons and there is nothing to show the bullets were recently fired from the casings. From the evidence at the preliminary examination, it is still as probable that the petitioner did not commit the crime as that he did. The term "probable" has been defined as meaning, having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. (*Ex parte Heacock,* 8 Cal.App. 420 [97 P. 77].)

Applying the law to the facts adduced at the preliminary hearing it is clear that there is no reasonable or probable cause to believe that the petitioner has committed the crime charged. Speculation and conjecture would have to be indulged in to connect petitioner with the crime.

In view of the foregoing, let the peremptory writ of prohibition issue as prayed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied July 19, 1956, and respondent's petition for a hearing by the Supreme Court was denied August 16, 1956.