511 P.2d 1334

Desmond DEAN, Claimant, Respondent and Cross-Appellant,

v.

DRAVO CORPORATION et al., Argonaut–Northwest Insurance Co., Surety, Defendants, Appellants and Cross-Respondents.

No. 11086.

Supreme Court of Idaho.

June 29, 1973.

John W. Barrett, Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-appellants and cross-respondents.

Paul C. Keeton, Lewiston, for respondent and cross-appellant.

BAKES, Justice.

On October 14, 1969, respondent-cross appellant Desmond Dean of Lewiston, Idaho (hereinafter referred to as "Dean"), while employed on the Dworshak Dam project by Dravo Corporation et al, doing business as Dworshak Dam Constructors, sustained a dislocated left shoulder as a result of an industrial accident. Dean was treated that day by Dr. Robert D. Hill of Orofino, Idaho. He lost no time from work as a result of this accident, but continued with a lighter type work. By November 11, 1969, Dean was able to return to his regular work. Dworshak Dam Constructors at all times pertinent to this action were insured by defendant-appellant Argonaut-Northwest Insurance Company.

Appellant surety made payment of medical expenses incurred in this accident and the file was closed by approval of the Industrial Commission on February 11, 1970.

On July 12, 1970, while water skiing, Dean again dislocated the same left shoulder which had previously been dislocated in the industrial accident on October 14, 1969. Dean was treated by Dr. Joe Baldeck and referred to Dr. Robert C. Colburn, both of whom are located in Lewiston, Idaho. Dean personally paid the medical expenses incurred in this second dislocation. As a result of this dislocation on July 12, 1970, Dean remained away from work for a period of approximately one week.

On August 19, 1970, while climbing a ladder at work, Dean's left shoulder was again dislocated. He continued to have problems with his left shoulder and on August 31, 1970, surgery was performed by Dr. Colburn, an orthopedic surgeon, to correct the situation. Following this surgery Dean was hospitalized in Lewiston, Idaho, for four days and did not return to work until November 19, 1970.

On September 29, 1970, the Argonaut-Northwest Insurance Company notified Dean that its investigation revealed that the shoulder trouble requiring surgery was caused by the intervening non-industrial water skiing accident and that his medical expenses incurred in the surgical repair would not be covered under Idaho Workmen's Compensation Law.

On October 26, 1970, Dean petitioned the Idaho Industrial Commission for a hearing. At that hearing the only medical witness produced by Dean was Dr. Colburn who performed the surgical repair of the arm. In his direct examination Dr. Colburn concluded with a reasonable degree of medical probability that the original industrial accident on October 14, 1969, contributed to the requirement for surgical repair of the shoulder, and he gave his opinion that the cause should be prorated two thirds to the industrial accidents and one third to the

non-industrial water skiing accident.[1] However, on cross examination Dr. Colburn retrenched on his opinion that the causal connection was with a reasonable degree of medical probability, and stated that, "I think I cannot state it with more than a possibility."[2] The Industrial Commission concluded that:

"Based on this testimony, the Commission finds that Dr. Colburn has attributed the cause of two-thirds of the claimant's need for surgery and his resulting temporary and permanent disability to the October 14, 1969, accident with a reasonable degree of medical probability." Finding of Fact VII.

Were it not for the change in Dr. Colburn's testimony on cross examination, his opinion given in his direct testimony, that there was a sufficient causative relationship with a reasonable degree of medical probability between the claimant's two industrial accidents and his need for surgery, would have been adequate to sustain the Industrial Commission's finding of fact VII recited above. However, in view of his retrenchment from that opinion on cross examination we must decide whether or not his opinion stated on cross examination that, "I think I cannot state it with more than a possibility," was mere impeachment which permitted, but did not require, the Industrial Commission to disregard his opinion expressed on direct examination, or whether the admission obtained on cross examination was a change or withdrawal of the direct testimony of Dr. Colburn, thus removing the opinion basis for the Industrial Commission's finding that the industrial accident on October 14, 1969, contributed to the need for surgery and the resulting disability "with a reasonable degree of medical probability."

In order to recover in Workmen's Compensation cases there must be medical testimony supporting the claim for compensation with a reasonable degree of medical

---

1. "Q. In doing this rating, Doctor, did you take into consideration that the shoulder had been dislocated in October of 1969, in July of 1970, and again in August of 1970?

"A. The rating was primarily based on anatomical situation at the last time I examined him.

"Q. To which incident did you relate that, do you relate that to the incident of October or the incident of July or the incident of August of 1970?

"A. I have tried to avoid answering that question. Of course, his disability rating was what was wrong with him and not why it was wrong. I think this is a most difficult question to answer because he did have three incidents.

"Would he have had any of them had he not had the first one? This is one philosophical point of view.

"Would he not have had any problem if he had not dislocated it the second time? That is another philosophical point of view.

"I don't know any medical answer. I would say, when pressed, that he had two things that happened to him while he was at work and one while he wasn't.

"If I had to say, I would say it was two-thirds due to something that happened at work and one-third that happened at play." Tr. pp. 14–15.

2. "Q. Doctor, I appreciate the medical difficulty in trying to determine causative relationship as to the ultimate responsibility for paying for the surgical procedure that was done and the responsibility on a causative relationship basis of the resultant total temporary and partial permanent disability.

"Doctor, let me ask you this: considering what is in that report of July 16, and considering the medical knowledge of the subject, and all aspects of this claim, are you stating with a reasonable degree of medical certainty your opinion or are you stating that this is a possibility that any one of these incidents could have been the moving cause in bringing about the need for surgery?

"A. You are speaking, in my opinion, as of this time?

"Q. Yes. Looking at the whole picture. Can you state it with any more than a possibility, the causal relationship and the ultimate need for surgery and the resultant disability?

"A. I don't think I can state it positively without falling back on statistics from other situations.

"In other words, the main factor involved is the man's relative use and the phys-

probability.[3] Comish v. Simplot Fertilizer Co., 86 Idaho 79, 383 P.2d 333 (1963); Clark v. Brennan Construction Co., 84 Idaho 384, 372 P.2d 761 (1962); Laird v. State Highway Department, 80 Idaho 12, 323 P.2d 1079 (1958). In Davenport v. Big Tom Breeder Farms, Inc., 85 Idaho 604, this Court stated at page 609, 382 P.2d 762 at page 764 (1963):

"Further, a claimant must not only prove that he was injured, but also prove that the injury was caused by an accident arising out of and in the course of his employment. [Citing authorities]. *Thus, claimant was required to establish a probable, not merely a possible, connection between cause and effect to support his contention that he suffered a compensable accident.*" (Emphasis supplied).

This rule was reiterated in Kern v. Shark, 94 Idaho 69, 480 P.2d 915 (1971), wherein this Court said:

"A claimant in a workmen's compensation cause has the burden of proving compensable disablement, caused by an accident arising out of and in the course of his employment. *His proof must establish a 'probable, not merely a possible, connection between cause and effect to support his contention that he suffered a compensable accident.'* (Omitting citations)." 94 Idaho at 71, 480 P.2d at 917. (Emphasis supplied).

Based upon the record of Dr. Colburn's direct and cross examination, we are of the opinion that his admission on cross examination that, "I think I cannot state it with more than a possibility" is not a mere

ical fact that we know that he is prone to recurrent dislocations.

"In other words, which end of the statistics would he have been on, the one that was more likely to have it or the one that didn't? That I think is the
. . .

"I don't know of any medical way to state that.

"Q. In other words, are you saying here that medically you cannot state it with anything more than a possibility in fairness to all the parties?

impeachment of his opinion on direct examination, but in effect is a change of his direct testimony. Cf. Hayward v. Yost, 72 Idaho 415, 242 P.2d 971 (1952). Thus, with no other medical testimony to support the claim to a reasonable degree of medical probability, the award of the Industrial Commission must be reversed.

However, we are of the further opinion that Dr. Colburn was not using the words "possibility" and "probability" in their legal sense, i. e., in the manner in which they are used in Davenport v. Big Tom Breeder Farms, Inc., *supra,* and Kern v. Shark, *supra.* On redirect examination, Dr. Colburn was asked to explain what he meant by "possibility" and "probability." His statement, that a "possibility" is "something that could well happen but would not necessarily happen," and a "probability" is "something that is very likely to happen," does not comply with the legal definitions of those terms. While this Court in Kern v. Shark and Davenport v. Big Tom Breeder Farms, Inc., pointed out that an award must be based upon a "probability" and not a "possibility" we have never had occasion to define those terms.

Webster's New International Dictionary, 2d Edition, defines "probable" as "having more evidence for than against." The Utah Supreme Court in O'Brien v. Industrial Commission, 90 Utah 266, 61 P.2d 418, 419 (1936), stated:

"A probability of the existence of a thing is created when there is more evidence in favor of its existence than against it."

"A. I think I cannot state it—I think that is a good statement. I think I cannot state it with more than a possibility.
"Q. As to causative relationship?
"Q. Yes." (Tr. pp. 19–20).

3. Medical testimony has not always been required. Stralovich v. Sunshine Mining Co., 68 Idaho 524, 201 P.2d 106 (1948); Walker v. Hogue, 67 Idaho 484, 185 P. 2d 708 (1947).

**562**

See also Brown v. Beck, 62 Cal.App. 686, 220 P. 14 (1923); In re Salmon's Estate, 159 Misc. 379, 287 N.Y.S. 814 (1936). The following additional authorities support the view that a probability exists when there is more evidence in favor of a proposition than against it. Langford v. Pearson, 334 S.W.2d 473, 476 (Tex.Civ.App.1960); Indemnity Ins. Co. of North America v. Carrell, 318 S.W.2d 744, 748 (Tex.Civ.App. 1958); Price v. Neyland, 115 U.S.App.D.C. 355, 320 F.2d 674, 678; Jefferson Standard Life Ins. Co. v. Wigley, 248 Ala. 676, 29 So.2d 218, 224; People v. Jaurequi, 142 Cal.App.2d 555, 298 P.2d 896, 899 (1956); Malleck v. Superior Court, 142 Cal.App.2d 396, 298 P.2d 115 (1956); 34 Words and Phrases, Perm.Ed., "Probable" p. 6. If a "probability" exists when there is more evidence in favor than against, to avoid a definitional gap a "possibility" must then exist when the evidence is less than that required to constitute a probability.

Viewed in the light of these definitions, it is apparent that Dr. Colburn could well have been of the opinion that there was more than a 50% chance that either the October 14, 1969, or the August 19, 1970, industrial accidents contributed to the need for surgery, and yet under his definition it could still have been only a "possibility" as he defined it since those accidents would not "necessarily" have caused it.

Therefore, the Industrial Commission's order awarding compensation must be reversed and the cause remanded for a new hearing and further evidence on the issue of whether or not there is a causal relationship between either of the industrial accidents suffered by the claimant and the surgery performed on August 31, 1970, and the resultant partial disability, to a reasonable degree of medical certainty or probability, based upon the definition of "probability" as herein defined.

Appellant surety's other assignment of error regarding apportionment and cross-appellant Dean's assignments of error regarding apportionment of medical expenses, compensation and failure to award attorney's fees are rendered moot in view of our remand of this matter for a new hearing before the Industrial Commission.

Judgment reversed and remanded.

DONALDSON, C. J., and SHEPARD, McQUADE and McFADDEN, JJ., concur.