540 P.2d 1337

Desmond DEAN, Claimant-Appellant,

v.

DRAVO CORPORATION et al., Defendants-Respondents.

No. 11723.

Supreme Court of Idaho.

Oct. 7, 1975.

Rehearing Denied Oct. 24, 1975.

Paul C. Keeton, Lewiston, for claimant-appellant.

John W. Barrett, of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respendents.

McFADDEN, Justice.

Claimant-appellant Desmond Dean underwent corrective surgery on August 31, 1970 for recurrent shoulder dislocation. The operation, known as a capsulorrhaphy, was done by Dr. Robert C. Colburn, an orthopedic surgeon, on Dean's left shoulder following a series of three shoulder dislocations. The facts and circumstances of these dislocations are set out with particularity in *Dean v. Dravo Corporation,* 95 Idaho 558, 511 P.2d 1334 (1973). For our purposes we note that Dean's first dislocation was the result of an industrial accident on October 14, 1969. The second dislocation occurred while Dean was waterskiing on July 12, 1970, and the third dislo-

cation occurred on August 19, 1970 while Dean was working. During this period Dean was employed by defendant Dworshak Dam Constructors, whose surety was defendant Argonaut Northwest Insurance Company. This proceeding was based on a claim arising out of the dislocation which occurred on October 14, 1969, and the present proceedings were held following filing on October 27, 1970, by Dean of a notice for hearing, seeking payment of medical expenses, temporary disability, and permanent partial disability compensation.

The surety denied Dean coverage for his disability and medical expenses incurred in the surgical repair on the ground that the need for surgery was caused by the intervening nonindustrial water-skiing accident. The cause was heard with Dean and Dr. Colburn being the only witnesses at the hearing. On the basis of Dr. Colburn's testimony the Commission found that Dean suffered a permanent partial disability equivalent to 5% of the loss of the arm at the shoulder and that two-thirds of this disability and two-thirds of the cost of the surgery could be attributed to the October 14, 1969, accident. The Commission then entered its order awarding Dean two-thirds of total disability for eleven weeks, two-thirds of permanent partial disability of five percent as compared to the loss of the arm at the shoulder and two-thirds of the medical expenses incurred. The two-third and one-third allocation was based on the finding by the Commission that two of the dislocations of the shoulder were work connected, and the third dislocation was not.

On the first appeal this court reversed the order of the Commission (*Dean v. Dravo Corporation, supra*) on the ground that Dr. Colburn had testified with an improper definition of the term "probability" in mind. The opinion pointed out that special attention should be given to the definition of "probable" in the legal sense rather than the popular sense, stating that "a probability exists when there is more evidence in favor of a proposition than

against it." *Dean v. Dravo Corporation,* 95 Idaho 558, 562, 511 P.2d 1334, 1338 (1973).

Upon remand, Dr. Colburn was the only witness. On direct examination he testified that he had come to a conclusion as to whether there was a relation between the October 1969 dislocation and the two subsequent dislocations, one on July 12, 1970, and again on August 19, 1970. He stated:

"At that time I came to the conclusion that he had, by definition, a recorrect [recurrent] dislocation of the shoulder. When I first saw him he had had two dislocations and we feel that is recurrent dislocations. At the time, at least, when we scheduled the surgery he had had the third dislocation which really confirmed that he did have a condition of recorrect [recurrent] dislocation."

He testified that he was familiar with the opinion of this court and its definition of the term "probability" and also of the term "possibility." He then stated that in his opinion:

"I think that it is probable that the injury of October 1969 was the factor in the development of the condition that I saw him—that we performed the surgery for in 1970."

Dr. Colburn testified that statistical studies reflect that if a person is under the age of forty, the chance of a shoulder dislocation recurring is about seventy percent. This figure drops to thirty percent for those over the age of forty. (At the time of the first dislocation, Dean was about 34 years of age.) Dr. Colburn then testified:

"Q. Did you take those statistics into consideration in reaching your conclusion as to a reasonable degree of medical certainty or probability in this case?

"A. Yes. I felt that this was consistent with the definition of probability as the existence of the thing is rated when there is more evidence in favor of its existence than against it. I felt that the statistics were more in favor of this than against it."

Dr. Colburn was then asked if he had an opinion on the question of whether Mr. Dean's disability as he had previously rated him, was connected with the three accidents, and he stated that he thought there was a connection. He stated:

"I would hark back to the definition. Since the surgery was done for recurrent dislocated shoulder and since his disability essentially is caused by the effects of the surgery in limiting his shoulder motion to some extent, in the sense it stated that I think it is probable that the October 1969 dislocation was the cause of his recurrent dislocation, then, I think that disability, by corollary, would be related to the October injury."

On cross-examination, Dr. Colburn was asked to consider a statement he had made in a written report concerning Dean, and in particular concerning the second dislocation. Following a summation of the facts he was asked:

"Would the second dislocation (from waterskiing) have occurred even though the first one had not occurred, considering the amount of force and the nature of the accident that we are confronted with in the water skiing accident?"

To which question Dr. Colburn answered:

"A I think this is something we have to speculate on, I don't think we have any real way to say."

He was then asked after some preliminary statements:

"Can you state medically, without speculating, whether the second dislocation would have occurred had not the first one occurred; considering the history given to you by Mr. Dean * * * and your findings?

A. Medically I don't think we can state absolutely I mean without speculating.

Q. I mean without speculating.

A. Without speculating. Except that we know that statistically a man under forty is more likely to develop this."

The record further shows the following testimony by Dr. Colburn:

"Q. Could you state with that definition [the definition of 'probability'], with the history as reported * * that we just covered. Would that water skiing would not have occurred or would have occurred had it not been for his first accident in October of '69, concerning his history that you related in your letter of July 16, 1970?

"A. I don't think that there is any way that, medically, that we can determine that. I don't think medically, by what we found and from the surface in examining the person that we can say without some conjecture and some reliance on other recorded information, that the water skiing dislocation would or would not have occurred in the absence of the October dislocation.

"Q. Would this also be true of the August incident.

"A. I think so."

From all of Dr. Colburn's testimony it is evident that the essence of recurrent dislocation is that each dislocation can be precipitated by less and less trauma. In this case the first dislocation was precipitated by severe trauma, the second dislocation while engaged in water-skiing, while the third was precipitated by a lesser degree of trauma. While the witness recognized that a condition of recurrent dislocation existed after the second dislocation he stated he would have to rely on "some conjecture and some reliance on other recorded information" in order to say it existed after the first dislocation.

On the basis of this testimony the Commission found, among other things, that Dr. Colburn's "testimony on direct examination, wherein he expressed his opinion of causation in terms of probability, was substantially changed on cross-examination to the point that his opinion must be considered to be based only upon speculation. The Commission finds that there is not

sufficient evidence to establish a causal relationship between the industrial accident suffered by the claimant and the subsequent surgery and partial disability to a reasonable degree of medical probability." The Commission then denied recovery. Dean by this appeal challenges this finding asserting the Commission erred, as there was substantial competent evidence requiring a finding in his favor.

Findings of the Commission are binding on this court on appeal when supported by substantial competent evidence. I.C. § 72–724, § 72–732. "Conversely, when the findings are not supported by substantial, competent evidence, they are not binding or conclusive, and upon appeal will be set aside. Whether such findings are supported by substantial, competent evidence is a question of law to be determined by the court." *Paull v. Preston Theatres Corporation,* 63 Idaho 594, 600, 124 P.2d 562, 564 (1942).

Dr. Colburn's testimony is the only evidence pertaining to causation, i. e., whether the industrial accident of October 19, 1969, was the causative factor leading to the necessity of the operation which is the basis of the petition for hearing. It is the conclusion of the court that, contrary to the determination by the Commission, the testimony of Dr. Colburn as to the causation is consistent and uncontradicted. Dr. Colburn first expressed his opinion that there was a "probable" causal connection between the October 14, 1969 accident and the condition for which the surgery was performed, which opinion was partially based on statistical reports. On cross-examination he conceded it was impossible, medically speaking, to state without some conjecture that the water-skiing dislocation would or would not have occurred in the absence of the dislocation of October 14, 1969. However, whether or not the second dislocation (water-skiing accident) would have occurred had it not been for the industrial accident on October 14, 1969, was not a relevant question, and Dr. Colburn's statement that he could not answer that

question without some speculation did not detract from his previously expressed opinion that there was a probable causal connection between the October 14, 1969, accident and the condition for which surgery was performed. Thus, there was no impeachment of the witness's testimony on his direct examination. Furthermore, the answer on cross-examination was in response to a question which had eliminated the additional element of the statistical reports upon which his original testimony was based. It is the conclusion of the court that Dr. Colburn's testimony established the causal relationship, to a reasonable degree of medical probability, which takes this case out of the realm of the mere speculation condemned in *Bills v. Rich Motor Co., Inc.,* 96 Idaho 259, 526 P. 2d 1095 (1974).

A similar issue was presented in *Clayton v. State Compensation Dept.,* 253 Or. 397, 454 P.2d 628 (1969). That case involved a widow's claim under the state's workmen's compensation act. The principal issue was whether the stress and fatigue sustained in the decedent-husband's work was a causal factor in producing his heart attack. The only medical testimony was that of Dr. Griswold who was unable to find a probability of causation in that particular case. He testified: "[I]n a group of people susceptible to coronary artery disease, stress probably is a factor, but in any single individual, it's difficult to say." In that case the court stated:

"In making a diagnosis the doctor draws upon the conclusions of medical science demonstrating that certain diseases can be traced to certain causes. These conclusions are not stated in absolutes; they are expressed in terms of probabilities. From the emperical study of many cases medical science can say that if certain symptoms are present there is a probability that certain disease is present. The probability is stronger in the identification of some diseases than it is in others, depending upon what has been learned about the causes for the particular dis-

162

ease. The diagnosis in a particular case involves the reasoning that since this probability has been established in cases in general the probability exists in the particular case being diagnosed. In the absence of evidence showing that the particular case in issue is distinguishable from cases in general it must be accepted that where medical science finds a probable causal relationship for the general group probable legal cause is established for the particular case being litigated." 454 P.2d at 631.

See also, 3 Larson's Workmen's Compensation Law § 80.32 (1973).

In the instant case Dr. Colburn's testimony that in his opinion there was a probable relationship between the October 1969 injury and the ultimate necessity for the operation stands uncontradicted. There is a lack of competent, substantial evidence to sustain the Commission's finding to the effect that the doctor's testimony was changed on cross-examination, as the question asked of him dealt with an issue immaterial to principal question. Thus, the conclusion of the commission, to the effect that there was "not sufficient evidence to establish a causal relationship between the industrial accident suffered by the claimant and the subsequent surgery and partial disability to a reasonable degree of medical probability", was in error.

It is the conclusion of the court that the testimony of the doctor as to the causal relationship between the accident of October 14, 1969, and the need for the subsequent surgery was fully sustained. *Paull v. Preston Theatres Corp.*, supra.

Since Dean suffered three separate accidents, each of them may have contributed in greater or lesser degree to his need for surgery and resulting disability. Since he can recover only for the costs and expenses arising from compensable industrial accidents it remains for the Commission to make an apportionment of the medical expenses and disability. Therefore, the order of the Commission is reversed and the proceeding remanded with directions to the Commission to make findings in conformity with the views expressed herein, and the Commission shall take such further testimony, if necessary, to resolve the issue as to apportionment of costs of surgery and resulting disability. Costs to appellant.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.