665 P.2d 1069

Dean H. CARTER, Claimant-Appellant,

v.

GARRETT FREIGHTLINES, Employer and Truck Insurance Exchange, Surety,

and

State of Idaho, Industrial Special Indemnity Fund, Defendants-Respondents.

No. 14405.

Supreme Court of Idaho.

June 30, 1983.

Keith A. Zollinger, Pocatello, for claimant-appellant.

Gary L. Cooper, Pocatello, for defendants-respondents Garrett Freightlines and Truck Exchange.

M. Jay Meyers, Pocatello, for State of Idaho, Industrial Special Indemnity Fund.

SHEPARD, Justice.

Carter was employed by Garrett Freightlines from 1956 to March of 1979 as a parts man, during which time he was involved in three industrial accidents. Carter filed motions with the Industrial Commission to allow modification of certain workmen's compensation settlement agreements which he had signed with Garrett and which had been approved by the Commission, related to the industrial accidents. Carter appeals from the Commission's denial of those motions.

On the first industrial accident in August 1972, Carter sustained injuries to his back and left hip for which he was hospitalized in September 1972 under the care of Dr. Gresham, an orthopedic surgeon. X-rays taken at that time revealed that Carter had moderate degenerative arthritis in his back and severe degenerative arthritis in his left hip, both of which pre-existed his August 27, 1972 injury. As a result of the injury, a hip arthroplasty (a total joint replacement) was performed on Carter's left hip by Dr. Gresham. In October 1972, Carter was admitted to the hospital for treatment of phlebitis, which developed subsequent to the arthroplasty. He returned to work in late May of 1973.

As a result of that first injury, Dr. Gresham rated Carter's permanent impairment at four percent of the whole man for the injury to his lower back, which injury was said to have aggravated his pre-existing arthritis, and six percent of the whole man for the left hip arthroplasty. At that time, Dr. Gresham noted that Carter's major problem was his extreme obesity, for which Dr. Gresham recommended that Carter lose weight. A compensation agreement relating to the August 27, 1972 injury was executed by uncounseled Carter and approved by the Commission in August of 1973. That agreement awarded Carter compensation based upon a disability rating of ten percent of the whole man. It is undisputed that the time for modifying the compensation agreement pertaining to the 1972 industrial accident has passed (see I.C. § 72–719), and that therefore that agreement cannot be modified.

In May 1976, Carter was involved in a second industrial accident while he and his supervisor were attempting to move an I-beam. Dr. Gresham examined Carter on May 28, 1976, relative to Carter's complaints of pain in the lumbosacral area of his spine and of pain in his left hip. In a report to the surety, Dr. Gresham stated that Carter had gained considerable weight since August 1973, that Carter had not injured his hip in any way, and that he had sustained a sprain of his lower back which aggravated the pre-existing arthritis in his spine. In July 1976, Dr. Gresham closed his file, noting that Carter's condition was improving and that Gresham was assigning Carter no impairment rating for the low back injury. Carter did not lose time from work as a result of this May 1976 injury. Carter testified that following the injury he needed some assistance in performing his normal duties for a period of a few days, but thereafter he performed his full duties.

The third industrial accident occurred in October 1976, at which time Carter sustained a shoulder injury while removing a motor from a shelf. Carter was thereafter seen by Dr. Gresham, who diagnosed the injury as an acute sprain and a severe strain of the rotator cuff. In February

1977, Dr. Gresham wrote a letter to the surety to the effect that Carter had a permanent partial disability of approximately fifteen percent of the arm at the shoulder, which translates into nine percent of the whole man. A compensation agreement relative to the October 13 injury was entered into by the parties on June 14, 1977. The agreement, which gave Carter a permanent disability rating of nine percent of the whole man, was approved by the Commission. Again Carter was uncounseled.

In October 1977, Carter returned to Dr. Gresham for further evaluation, complaining of multiple problems with his neck, shoulder, hip and leg. On November 7, 1977, Dr. Gresham reiterated to the surety Gresham's earlier view that Carter had an impairment rating of 15 percent of the arm at the shoulder. Gresham also reported that, because of Carter's continued trouble with phlebitis and severe chronic edema, Carter should have an impairment rating of an "additional 10% of the leg at the hip." Based upon this report, an additional compensation agreement was entered into by the parties and approved by the Commission, which agreement awarded Carter compensation for a disability rating of 10% of the leg at the hip, or four percent of the whole man.[1] Carter was again uncounseled. At the time of the 1977 compensation agreement, Garrett Freightlines, through its surety, Truck Insurance Exchange, had, pursuant to the various compensation agreements, compensated Carter for impairment equal to 23 percent of the whole man. Of this 23 percent, 14 percent resulted from Carter's 1972 accident (four percent due to phlebitis and edema, six percent due to his left arthroplasty, and four percent due to the injury to his lower back), and nine percent resulted from Carter's October 1976 shoulder injury.

In December 1978, Dr. Gresham, upon examining Carter, expressed concern over Carter's continued ability to work. He noted that Carter was becoming progressively more incapacitated, to the point of being nearly incapable of holding a job. In a letter to the surety dated February 22, 1979, Dr. Gresham summarized Carter's problems and noted that "his prognosis is poor because of his obesity, his progressive arthritis showing neurological abnormalities, his chronic phlebitis and the problems with his neck and shoulder." Dr. Gresham also expressed concern about Carter's weight problem and stated that he had advised Carter to consider the possibility of a gastric stapling to attempt to decrease his weight.

Carter continued to work for Garrett Freightlines as a parts man until March 1, 1979, at which time he ceased work entirely.

In April of 1980, Carter filed a motion, pursuant to I.C. § 72–719, to modify the compensation agreements resulting from the industrial accidents in 1976, alleging that there had been a substantial change in the nature and extent of his injuries and disablements, and that he had become totally and permanently disabled. Upon the filing of Carter's motion, the Industrial Indemnity Fund was brought in as an additional defendant by Garrett Freightlines and its surety, Truck Insurance Exchange.

A hearing was held before the Industrial Commission on January 19, 1981. Carter testified on his own behalf as to the additional physical limitations which he had begun experiencing shortly after the May 1976 injury. Dr. Gresham testified, on behalf of Carter, that Carter was entitled to an impairment rating for his low back problems of ten percent of the whole man—a change of six percent over the four percent of the whole man rating originally assigned for Carter's low back problems. Gresham further testified that, in addition to the impairments related to industrial accidents, Carter had impairments resulting from carpel tunnel syndrome; obesity; arthritis in his knee; and pre-existing degenerative ar-

---

1. Dr. Gresham later testified, at the hearing upon Carter's motion to reopen the compensation agreements resulting from the 1976 industrial accidents, that the additional rating was not due to, nor aggravated by, either of the 1976 injuries, but was totally attributable to Carter's 1972 injury.

thritis in his low spine, Carter's total body impairment equalling 67 percent of the whole man. The impairment rating assigned to Carter's shoulder by Dr. Gresham was nine percent—the rating for which Carter was compensated in connection with the October 1976 industrial accident. Accordingly, the parties agreed that the compensation agreement relating to the October 1976 injury was not modifiable.

Pursuant to stipulation, the record was left open, and Garrett Freightlines was permitted to file with the Commission the deposition of Dr. James Coughlin, the chairman of the medical panel which examined Carter on August 11, 1980 in connection with this case. The examination was conducted at the request of the surety, in accordance with the provisions of I.C. § 72–433. Although Dr. Coughlin had not himself examined Carter, he had been present during the examination, and as chairman of the panel, he had written the report of its findings. Coughlin testified that the May 1976 accident could have contributed to the claimant's increased impairment.

On September 18, 1981, the Commission entered its Findings of Fact, Conclusions of Law, and Order. The Commission found that Carter had established that his condition had changed since the May 24, 1976 industrial accident and that he was totally and permanently disabled. However, the Commission also found that Carter had not established, to a reasonable degree of medical probability, a causal relationship between his change in condition and the May 1976 accident and injury. Accordingly, the Commission concluded that Carter was not entitled to modification of the compensation agreement. The Commission denied Carter's motion for reconsideration.

Although the facts of this case are quite complex, the question before this Court is rather simple. The sole issue on appeal is whether substantial and competent evidence supports the Commission's finding that Carter failed to show the requisite causal connection between his May 1976 industrial accident and the change of his condition to one of total and permanent

disability. *See State, Department of Employment v. Lenard's Trash Service,* 104 Idaho 299, 658 P.2d 970 (1983) (findings of the Commission shall be affirmed if supported by substantial and competent evidence); *Bowman v. Twin Falls Construction Co.,* 99 Idaho 312, 581 P.2d 770 (1978) (the claimant has the burden of proving a causal connection between his impairment or disability and an injury arising out of and in the course of employment).

The Commission found that "[t]he evidence, in this case, does not establish that the change in the nature or extent of the Claimant's condition is attributable to either the May, 1976 accident or the October, 1976 accident." In denying Carter's motion for reconsideration, the Commission clarified its finding by stating that claimant's physician, Dr. Gresham, "was not able to say, with a reasonable degree of medical probability, that the change in the Claimant's condition was due to the May, 1976 accident." Having reviewed the entire record in this case, particularly the testimony of Dr. Gresham, we hold that there is substantial and competent evidence to support the Commission's finding. Dr. Gresham stated:

> "[T]here's no way of stating with reasonable certainty ... that the progression was due to the '76 injury. We can only say that it progressed and the factors which we have mentioned which may also, you know, that injury may be a factor, but not a certain factor. But those things we have mentioned singly or in combinations lead to the further problems, and I cannot speak with certainty on any of those factors as the cause of the problem."

Accordingly, the decision of the Industrial Commission denying Carter's motion for modification of certain workmen's compensation settlement agreements, is affirmed.

DONALDSON, C.J., BAKES, J., and McFADDEN, J. (Ret.), concur.

BISTLINE, Justice, dissenting.

I cannot agree that there is substantial and competent evidence to support the

Commission's findings in this case. Accordingly, I believe that the decision of the Commission should be reversed. *Dean v. Dravo Corp.,* 97 Idaho 158, 160, 540 P.2d 1337, 1340 (1975) (findings of the Commission not supported by substantial and competent evidence are not binding upon this Court; whether findings are supported by substantial and competent evidence is a question of law).

The Commission originally found that "[t]he evidence, in this case, does not establish that the change in the nature or extent of the claimant's condition is attributable to either the May, 1976 accident or the October, 1976 accident." R., p. 22. In denying Carter's motion for reconsideration, the Commission clarified its finding, stating:

"It is not accurate to state that Dr. Gresham attributed, with a reasonable degree of medical probability that change in condition to the May, 1976 accident. Dr. Gresham was questioned extensively regarding his opinion as to the cause of the Claimant's neurological changes, which resulted in him giving the Claimant an additional 6% of the whole man permanent partial impairment for his back. *The physician was not able to say, with a reasonable degree of medical probability, that the change in the Claimant's condition was due to the May, 1976 accident.*" R., p. 28 (emphasis added).

In support of its conclusion that Carter failed to establish a causal connection between his change of condition and an industrial accident, the Commission relied on select portions of Dr. Gresham's testimony:

"Q. [By Mr. Cooper] So at the present time, you gave him an additional 6% of the whole man?

"A. Yes.

"Q. But, as I understand it, you cannot say with reasonable medical probability that that's due to the '76 accident, but more probably is due to a combination of factors including his obesity?

"A. That is correct."

Tr., p. 57.

"Q. [By Mr. Zollinger] Doctor Gresham, in response to one of Mr. Meyers' questions, you indicated that in the injury in October of 1976, the neck injury, might have a possible effect on the low back describing, I think, catching a heavy weight in a bending position or something, and I would like to, in that same vein, I would like to clarify some things that Mr. Cooper was asking you. He was referring to reasonable medical probability; in your answers you were referring to reasonable medical certainty. I would like to ask if the acute low back sprain occasioned in May of 1976 as diagnosed by you, if you could say that there is a reasonable medical probability that it contributed in any degree whatsoever to his current low back disability or impairment ratings?

"A. You mean to his present rating?

"Q. Correct, not the entire 6%, but in any degree.

"A. Yes, I think it would and I would like to explain my thinking or rationale for that. I think that any insult to his back leaves a permanent mark in terms of the possibility and actual progressions. Certainly he had problems before with his back and another injury producing more back symptoms; one has to assume, although it's partially speculative, that each insult is more injury to the back and on a collective basis can contribute to symptoms that develop in the future without further injury."

Tr., pp. 72–73.

If the quoted portions of Dr. Gresham's testimony are read alone, they arguably appear to support the above statement of the Commission which I have underlined. However, the quoted passages must be read in context. It must be remembered that the employer and its surety brought in the Industrial Special Indemnity Fund (ISIF), and that pursuant to I.C. § 72–332, the employer and its surety were potentially liable for payment of compensation benefits "only for the disability caused by the [industrial] injury," the liability for the remaining compensation benefits falling upon the ISIF.

Dr. Gresham testified *repeatedly* that in his opinion there was a causal connection between the May 1976 accident and the increased impairment of Mr. Carter's low back. The respondents' argument is simply that his testimony was later contradicted, as evidenced by the above quoted excerpts. I cannot agree. The doctor's testimony which initially gave rise to the confusion in this case was elicited by Mr. Cooper, the attorney for the employer and its surety. It was Mr. Cooper's contention that even if the May 1976 accident were a cause of the change in Carter's low back condition, *only a portion* of the six percent change was attributable to the accident, the remaining portion of the change being caused by such factors as Carter's obesity and his change in gait. Read in context, it is clear that the questions by Mr. Cooper were an attempt to elicit Dr. Gresham's opinion of a proper apportionment of the six percent change in Carter's low back condition,[1] specifically what portion of that six percent was attributable to the May 1976 industrial accident. Mr. Cooper had already heard the doctor's direct testimony, and was only trying to establish with exactitude the small percentage for which his clients might be responsible. Although it is clear from the above quoted testimony that Dr. Gresham would not say that the *entire* additional six percent rating was attributable to the May 1976 accident, this certainly did not contradict his unwaivering opinion, based upon reasonable medical probability, that the May 1976 accident was a contributing cause *in some degree* to Carter's change in condition. This is well demonstrated by Dr. Gresham's responses to the questions posed on redirect examination by Carter's attorney, Mr. Zollinger. As quoted previously, on redirect, Dr. Gresham again answered affirmatively when asked whether he could say there was a reasonable medical probability that the May 1976 industrial injury contributed in any degree to Carter's current low back disability or impairment ratings. Therefore, it follows that Dr. Gresham did not contradict his medical opinion, which was that to a reasonable degree of medical probability, there was a causal connection between the May 1976 accident and the increased impairment of Carter's low back. Nor was Dr. Gresham's testimony otherwise contradicted.[2] The Commission should have accepted his opinion, and acted upon it accordingly. It appears very clear to me that the Commission was simply led astray when it passed on the motion for

---

1. At oral argument, Mr. Cooper, attorney for the employer and its surety, was asked the following question from the Bench:

"Had the Commission, if they accepted what Mr. Zollinger says is the proper view of the testimony and found that yes it was a cause of the '76 accident, and if the Commission had come up and said yes we'll give it one percent, you could have lived with that?" He answered, "Certainly," and the following exchange then occurred:

"FROM THE BENCH: But maybe Mr. Meyers [counsel for the ISIF] couldn't.

"MR. COOPER: To tell the truth, Your Honor, we briefed this in the post-hearing briefs, and I believe—I suggested something like that.

"FROM THE BENCH: I don't think we have those briefs, do we?

"MR. COOPER: You do not have those on the record. But that was all thoroughly briefed. And that was the additional problem, if the Industrial Commission was going to say that the claimant carried his burden, then you have to decide how to apportion the six percent.

"FROM THE BENCH: And that's why you brought the ISIF in?

"MR. COOPER: Absolutely. Absolutely. Because our only responsibility as surety is only that specific one or two percent that could be attributed to the May '76 accident. The total is their problem."

2. The only other medical testimony before the Commission was that of Dr. Coughlin, the chairman of the panel which examined Carter. His testimony was directed primarily toward the percentages of impairment for the various anatomical functions. When asked whether in his opinion, based upon reasonable medical probability, the May 24, 1976, accident contributed to the increased impairment in Carter's low back, he stated that it "possibly" could have. He also stated that there "could have been" a disability or an impairment resulting to Mr. Carter from the May 1976 injury to his low back. However, Dr. Coughlin admitted that he did not have any way of determining, based upon the records he had reviewed and the examination of Carter, whether additional disability or impairment was sustained by Mr. Carter in May 1976 to his low back.

reconsideration, at which time it was apparently directed to some out-of-context testimony. There is no reason to believe that the Commission is not aware of *Pierstorff v. Gray's Auto Shop and Aetna Casualty & Surety Co.*, 58 Idaho 438, 447–48, 74 P.2d 171, 175 (1937) ("A board, court or jury must accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable, or rendered so by the facts and circumstances disclosed at the hearing or trial."). (Reaffirmed in *Dinneen v. Finch,* 100 Idaho 620, 626–27, 603 P.2d 575, 581–82 (1979).)

The finding of the Commission that Carter failed to prove, with a reasonable degree of medical probability, that there was a causal connection between his change of condition (which resulted to total permanent disability) and the May 1976 accident, is not supported by substantial and competent evidence, and should not stand in the way of Carter's claim. Furthermore, where the Commission's finding that Carter's condition had changed after the May 1976 accident, with the further finding that he became totally and permanently disabled, have not been contested, and, because there is substantial and competent evidence which supports those findings, this case should be remanded to the Commission for the entry of an appropriate award. A majority of the Court either does not fully understand what took place here, or sees Carter's obesity as a sort of self-inflicted condition similar to misconduct.

Perhaps, should the Commission in the interests of fairness both to claimant and Dr. Gresham on reflection perceive that it may have been led astray, it does have the power to reexamine the issue on the basis of manifest injustice.