864 P.2d 613

**Frances Mae PHIPPS, Plaintiff–Respondent–Cross Appellant,**

v.

**William C. PHIPPS, Defendant–Appellant–Cross Respondent.**

**No. 20126.**

Supreme Court of Idaho,
Boise, September 1993 Term.

Nov. 26, 1993.

Nicholas T. Bokides, Weiser, for appellant.

Ira T. Burton, Weiser, for respondent.

BISTLINE, Justice.

## BACKGROUND AND PRIOR PROCEEDINGS

Mr. and Mrs. Phipps were divorced by decree of the district court in Washington County, Idaho, on August 10, 1982. Because Mr. Phipps received more than one-half of the couple's community property in the divorce, he and Mrs. Phipps executed an agreement whereby he would pay her either the greater of $300, or one-third of his monthly retirement benefits until she either remarried or died. The agreement stated as follows:

4. *ADDITIONAL AGREEMENTS:* That as an equalization of the community property, as the husband is receiving more than half of the community property, and not as alimony, the husband shall be ordered to pay to the wife the sum of $300.00 per month until such time as he retires or she remarries, whichever comes first. At the time of the husband's retirement, that the wife should receive one-third *of the husband's total retirement from whatever source,* excluding his Veterans' Administration compensation, or the sum of $300.00, whichever is greater. That said one-third retirement or $300.00 monthly payment shall be paid to the wife until such time as she dies or remarries. (emphasis added).

When Mr. Phipps retired in early 1984, his monthly retirement benefits totalled $1,065.89. At that time the parties orally agreed that increases in payments to Mrs. Phipps were to be calculated as one-third of Mr. Phipps' Social Security benefits, one-third of his Boilermaker–Blacksmith National Pension Trust retirement benefits, and one-third of another retirement fund from which he subsequently never received any benefits. Despite the existence of this agreement, and at least one inquiry by Mrs. Phipps, Mr. Phipps failed to inform her about the increases in his retirement benefits. Subsequently, in November of 1990, the administrators of the Boilermaker retirement fund began to pay one-third of Mr. Phipps' Boilermaker benefits directly to Mrs. Phipps. Although Mr. Phipps sporadically increased the amount of the payments to Mrs. Phipps, these increases did not correlate with the increases which he received from his retirement sources. In November of 1990, Mr. Phipps ceased paying to Mrs. Phipps anything attributable to his Social Security benefits, and commencing in January of 1991, he paid her only $300 per month.

Mrs. Phipps filed a complaint on January 1, 1991, alleging fraud and a shortfall of $3,692.59 in the payments. The magistrate

judge ruled that because the agreement assigned Mr. Phipps' retirement benefits, it violated 42 U.S.C. Sec. 407 (Sec. 407 of the Social Security Act), which prohibits the attachment of Social Security benefits, and was unenforceable. The magistrate judge also held that enforcing the agreement without considering Mr. Phipps' Social Security benefits would defeat the "entire property division of the divorce."

When Mrs. Phipps appealed, the district judge, sitting in an appellate capacity, reversed on the issue of the enforceability of the agreement. The district judge held that plain language of the agreement and the subsequent conduct of the parties illustrated that the intent of the parties was that Mr. Phipps make monthly payments to compensate Mrs. Phipps for the unequal division of community property. The district judge further ruled that Mrs. Phipps did not claim to assign Mr. Phipps' Social Security benefits; Mrs. Phipps only sought to obtain monetary judgment for unpaid monthly payments which was readily enforceable against Mr. Phipps' Boilermaker retirement fund.

## ANALYSIS

### I. Standard of Review

■ Because the issues appealed here are the same as those that were appealed to the district court, we review the record before the magistrate judge independently of the decision of the district court. *Robinson v. Joint School Dist. No. 231 Minidoka,* 105 Idaho 487, 670 P.2d 894 (1983); *First Interstate Bank of Idaho, N.A. v. West,* 107 Idaho 851, 852–53, 693 P.2d 1053, 1054–55 (1984).

### II. Did Mrs. Phipps Preserve the Issue of the Enforceability of the Agreement?

■ At Mr. Phipps' motion for summary judgment, the following colloquy took place between Mrs. Phipps' attorney and the magistrate judge:

MRS. PHIPPS [per her attorney]: [T]he real issue here in this proceeding that we brought is not the Social Security payments ... Then you get back to the issue of now can the Court order him to continue making those payments from Social Security, and I would agree that the Court cannot order him specifically to pay one-third of those over ... And the Court also can say, okay, you don't pay that one-third Social Security benefits as you agreed to do. I can't make you do it, but if you don't, then you have to make them up somewhere else ...

THE COURT: [W]ill you agree then the Court cannot—that Social Security benefits are not attachable and the Court cannot compel assignment of those, involuntarily.

MRS. PHIPPS [per her attorney]: Involuntarily.

Mr. Phipps alleges that this discussion and Mrs. Phipps' written arguments to the magistrate judge discloses her concession that the agreement violated 42 U.S.C. Sec. 407 and was unenforceable. Thus, he says, this issue was not properly before the magistrate judge or the district judge. This contention is without merit. In the above colloquy, Mrs. Phipps agreed that 42 U.S.C. Sec. 407 prohibits the *assignment* of Social Security benefits. Thus, the magistrate judge would not have the power to attach such benefits when entering a judgment against Mr. Phipps. Mrs. Phipps did not concede, however, that the agreement itself assigned Mr. Phipps' Social Security benefits or that such benefits could not be used as a measure of how much Mr. Phipps was to pay her on a monthly basis.

A close analysis of Mrs. Phipps' briefs to the magistrate judge also weakens Mr. Phipps' contention. In her first brief, Mrs. Phipps stated:

Defendant further argues that defendant is under no obligation under Federal law to share social security benefits with the plaintiff. That issue was previously briefed, and as set forth in those briefs, there is no assignment of those benefits by Court Order, and the defendant could voluntarily spend money from Social Security benefits to meet other obligations....

In her second brief, she stated:

[D]efendant is basically arguing that there was never an agreement by the

defendant to pay a portion of social security benefits to the plaintiff, and if so, that agreement is void.... The payments from social security are not void if *voluntarily* made by the defendant to pay an existing obligation.... It would be inequitable to now have the Court go back and determine that because social security benefits were not assignable, that the defendant could receive more than one-half of the community property assets, thereby voiding an agreement almost ten years old.

(Emphasis added).

█ We fail to see what issue Mrs. Phipps is arguing, if it is not the enforceability of the agreement pursuant to 42 U.S.C. Sec. 407. Mrs. Phipps certainly could have argued the issue more thoroughly, but exhaustive argument is neither required nor desired by our appellate rules and the interests of judicial efficiency.

█ Mr. Phipps next alleges that Mrs. Phipps did not comply with I.A.R. 35 and thus did not preserve the issue of the agreement's enforceability in her appeal to the district court. Again, we see no merit in this contention. I.A.R. 35 contains the following provisions:

(a) Appellant's Brief. The brief of the appellant shall contain the following divisions under appropriate headings: ...

(4) Issues Presented on Appeal. A list of the issues presented on appeal, expressed in the terms and circumstances of the case but without unnecessary detail. The statement of the issues should be short and concise, and should not be repetitious. The issues shall fairly state the issues presented for review. The statement of issues presented will be deemed to include every subsidiary issue fairly comprised within....

(6) Argument. The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon.

On the day after the district court announced that it would hear the matter as an appellate proceeding (rather than as a trial de novo), Mrs. Phipps complied with I.A.R. 35(4) by filing a statement of issues on appeal, which specifically included the issue of the enforceability of the agreement in light of 42 U.S.C. Sec. 407. Mrs. Phipps' brief to the district court incorporated therein her brief to the magistrate judge, which, as stated above, specifically argued the issue of the enforceability of the agreement in light of 42 U.S.C. Sec. 407.

Mr. Phipps' argument, therefore, is unpersuasive. The issue of whether or not the agreement between Mr. and Mrs. Phipps violates 42 U.S.C. Sec. 407 was properly before the magistrate judge and the district judge.

### III. Does the Agreement Violate 42 U.S.C. Sec. 407?

█ 42 U.S.C. Sec. 407 states, in relevant part:

Section 407. Assignment; amendment of section

(a) The right of any person to any future payment under this title (42 U.S.C. Section 401 et seq.) shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under the title (42 U.S.C.S. Section 401 et seq.) shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after the date of the enactment of this section (enacted Apr. 20, 1983), may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

The magistrate judge interpreted the provisions of the agreement between Mr. and Mrs. Phipps to constitute a transfer or assignment of Mr. Phipps' Social Security benefits, which is prohibited by Sec. 407. The record illustrates that the magistrate judge relied on one case which holds that

Sec. 407 of the Social Security Act "imposes a broad bar against the use of any legal process to reach all social security benefits." *Philpott v. Essex County Welfare Bd.,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973). The plain language of the Phipps agreement, however, does not refer to Mr. Phipps' Social Security benefits. Instead, the agreement only specifies that Mr. Phipps shall pay to Mrs. Phipps one-third of his total retirement benefits. It was the *oral* agreement between the parties that resulted in Mr. Phipps agreeing to divide his retirement funds as he did. Mr. Phipps now wishes to use this oral agreement as a means of escaping his obligations under the divorce settlement.

In *Philpott,* an individual named Wilkes applied for assistance from Essex County, New Jersey. As a condition for receiving this assistance, the Essex County Welfare Board required Wilkes to execute a reimbursement agreement. Under New Jersey law, such agreements have the force and effect of a judgment, allowing the Board to obtain reimbursement from property of Wilkes that was subsequently discovered or acquired. After Wilkes began receiving assistance from the Board, he received a lump-sum disability payment under the Social Security Act. When he declined to reimburse the Board, the Board sued to reach the bank account where Wilkes had deposited his benefit check. The Supreme Court held that Sec. 407 on its face prevented the Board from reaching Wilkes' Social Security funds. *Philpott,* 409 U.S. at 415, 93 S.Ct. at 592.

*Philpott* is distinguishable from the case at bar. Unlike the agreement signed by Wilkes, the agreement between Mr. and Mrs. Phipps did not specify the source of Mr. Phipps' payments. The agreement did not subject his Social Security benefits to legal process, or transfer the receipt or control of his Social Security benefits to Mrs. Phipps. For example, she did not receive and cash his checks.[1] Furthermore, the agreement did not provide for the attachment of Mr. Phipps' Social Security benefits. If he again fails to comply with the agreement, Mrs. Phipps can seek attachment of Mr. Phipps' Boilermaker benefits.[2] In short, the only importance of Mr. Phipps' Social Security receivable benefits is that they serve as a guide for his monthly payments to Mrs. Phipps.

Mr. Phipps next argues that because the administrators of his Boilermakers retirement fund began to send Mrs. Phipps one-third of such fund each month after she sent them a copy of the agreement, the agreement is an assignment of Mr. Phipps' Social Security benefits. We are unpersuaded by this contention. Neither on its face nor in practice did the agreement assign Mr. Phipps' Social Security interests. The treatment of Mr. Phipps' Boilermaker funds was a wholly separate matter.

Because we decide that the agreement is and has been enforceable, it is not necessary for us to address Mrs. Phipps' argument that Mr. Phipps' shortfall in his obligation stemmed from his Boilermaker funds.

---

1. Although the case law of other jurisdictions is not dispositive to our resolution of this case, the reasoning of other courts supports our conclusion. *Compare Tidwell v. Schweiker,* 677 F.2d 560, 568 (7th Cir.1982) (where Social Security payee ceded receipt and control of Social Security checks to state agency, a transfer of the checks in violation of 42 U.S.C. Section 407 had occurred) with *Moore v. Colautti,* 483 F.Supp. 357 (E.D.Pa.1979), *aff'd* 633 F.2d 210 (3d Cir. 1980); *French v. Director, Michigan Dep't of Social Servs.,* 92 Mich.App. 701, 285 N.W.2d 427 (1979); *Tunnicliffe v. Commonwealth of Pennsylvania Dept. of Public Welfare,* 483 Pa. 275, 396 A.2d 1168 (1978) (upholding agreements by Social Security recipients to repay certain loans after receiving Social Security funds, where agreements did not delineate the source of payment or cede control of Social Security checks to another party).

2. In September 1991, for example, Mr. Phipps' monthly Social Security benefits totalled $706.00 and his Boilermaker benefits equalled $716.11. One-third of these sums equalled $474.33, which may be satisfied from Mr. Phipps' Boilermaker income. Our decision today thus does not run afoul of our decision in *Idaho Falls Consol. Hosps., Inc. v. Board of Commrs. of Jefferson County,* 109 Idaho 881, 712 P.2d 582 (1985), where we disallowed consideration of a patient's Social Security benefits in determining her medical indigency status, since such consideration could lead to attachment of those benefits in violation of 42 U.S.C. Sec. 407.

## IV. Other Issues

■ Mrs. Phipps augmented the clerk's record with a list of the four issues which she appealed to the district court. Two of these issues were re-argued in the brief which she submitted to this Court. The other two issues which Mrs. Phipps appealed to the district court (whether or not Mr. Phipps' actions amounted to fraud against Mrs. Phipps, and whether or not Mr. Phipps is liable for the hospital and medical expenses which Mrs. Phipps incurred between 1984 and 1990) were not re-argued to this Court in either a brief or during oral argument. The district judge held that Mrs. Phipps was defrauded by Mr. Phipps, but that she was not injured, and that Mr. Phipps was not liable for Mrs. Phipps' medical and hospital expenses because such expenses constituted unforeseen consequential damages. Mrs. Phipps does not assign these rulings as error.

As stated above, I.A.R. 35 requires a respondent on appeal to list and argue the issues that have been presented on appeal. Our cases also hold that when issues presented on appeal are not supported by propositions of law, authority, or argument, they will not be considered by this Court on appeal. *Matter of Estate of Freeburn*, 101 Idaho 739, 741, 620 P.2d 773, 775 (1980); *Murray v. Farmers Ins. Co.*, 118 Idaho 224, 226, 796 P.2d 101, 103 (1990). Therefore, we do not review the issues of fraud and reimbursement.

## V. Conclusion

We reverse the magistrate judge and remand for further proceedings consistent with this opinion. Because the parties brought novel and difficult legal issues, no attorney fees are awarded on appeal. Costs on appeal to Mrs. Phipps.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.