887 P.2d 1043

**Antonio SOTO, Claimant–Appellant,**

v.

**J.R. SIMPLOT, Employer, Defendant–Respondent.**

**No. 20537.**

Supreme Court of Idaho,
Idaho Falls, May 1994 Term.

Dec. 22, 1994.

Beck & Peck, Chtd., Idaho Falls, for appellant. Robert K. Beck argued.

Daniel A. Miller, Boise, for respondent.

SILAK, Justice.

In this worker's compensation case, claimant Antonio Soto (Soto) appeals the Industrial Commission's finding that no permanent impairment exists from his job-related injury. He also appeals the duration of the Industrial Commission's award of temporary disability benefits. The issue before us is whether the Commission's findings are supported by substantial and competent evidence. We hold that substantial and competent evidence supports the Commission's finding of no permanent impairment, but not its finding as to duration of temporary disability.

## I.

## BACKGROUND AND PROCEEDINGS BELOW

### A. FACTS REGARDING IMPAIRMENT

On May 1, 1988, Appellant Soto injured his back while employed by Respondent J.R. Simplot Company (Simplot). Soto was cleaning frozen french fries out from under a conveyor belt with an air hose. When he started to come out from under the conveyor belt, Soto stood up and hit his lower back against an angular piece of iron. Soto testified he felt awful pain. A coworker observed a white mark on Soto's back that was starting to bleed, about the size of a quarter to a half dollar. Soto reported the injury to his foreman and went back to work. Soto continued working for several weeks after the injury. The company nurse examined Soto several days after the accident. She cleaned the abrasion and referred Soto to a company physician, Dr. Holm. On May 10, 1988, Dr. Holm examined Soto and diagnosed a muscle strain. Dr. Holm noted Soto's complaints of pain, prescribed pain medication, and ordered x-rays. The radiologist who studied the x-rays found Soto's lumbar spine to be normal.

Due to continued complaints of pain, Soto was examined or treated by ten different physicians during the period May 1988 through October 1991. Numerous medical records from these physicians were submit-

ted as evidence before the Industrial Commission. Some of the physicians' medical opinions were conflicting. For example, Soto saw a Dr. Petersen on October 25, 1989. Dr. Petersen's records show that upon reviewing a CT scan, he found a herniation at the L5–S1 disc. Likewise, a Dr. Schossberger, in his diagnosis in December 1989, found that Soto had a persistent and perhaps progressive herniation at the L5–S1 disk. Based on a lumbar myelogram of Soto on March 16, 1990, Dr. Schossberger recommended surgery and gave Soto a leave of absence from work beginning March 17, 1990.

By contrast, an orthopedic surgeon named Dr. Bowman concluded that surgery was not needed, relying on a September 12, 1990 MRI, which revealed no herniated disk at any level. Dr. Bowman concluded that Soto sustained a contusion sprain to his back and that he had been treated adequately and completely. In a report dated October 4, 1990, Dr. Bowman said Soto could return to full activity including his regular job. Based on Dr. Bowman's opinion, Dr. Schossberger was unwilling to go forward with surgery.

Soto went to a chiropractor named Dr. Ward in October 1991 to obtain a permanent impairment rating. Relying on American Medical Association (AMA) guidelines, Dr. Ward gave Soto a 17% whole person permanent impairment rating.

During visits to his doctors, Soto failed to mention a 1974 back injury, for which he also filed a worker's compensation claim and received a settlement. Additionally, Soto failed to disclose the 1974 back injury in response to interrogatories from Simplot. Soto was employed by Circle A Construction from November 1990 through February 23, 1991. When applying for that job, Soto answered "no" where the application asked if he had ever been injured on the job. Soto sometimes averaged over 70 hours a week while working as a truck driver for Circle A Construction. He never complained to his supervisor that he was having any problems or pain driving a truck.

## B. FACTS REGARDING TTD BENEFITS

Soto received some total temporary disability (TTD) benefits for May 1988, but sought additional TTD benefits from December 28, 1989, to November 15, 1990. The dispute over TTD benefits involves when such benefits should have begun.

On October 25, 1989, Soto began a voluntary, unpaid layoff from Simplot. Soto tried to return to work from his voluntary layoff on February 1, 1990. However, the company nurse found a note in Soto's file from a Dr. Kennedy, dated December 28, 1989, indicating Soto was restricted from returning to work. Soto was therefore instructed that he would first have to obtain a release from either Dr. Schossberger or Dr. Kennedy before he would be permitted to return to work. Soto contends his TTD benefits should have begun on February 1, 1990.

On March 17, 1990, Dr. Schossberger gave Soto a full work release restricting Soto from work, because he expected to soon perform surgery on Soto's back. Simplot conceded Soto is entitled to additional TTD benefits from March 17, 1990, through October 4, 1990, but denies any benefits for the period February 1, 1990, to March 17, 1990.

## C. PROCEEDINGS BELOW

Soto sought an award of benefits under the workers' compensation law for his May 1, 1988, injury, and filed an application for hearing with the Industrial Commission on May 24, 1991.

A referee heard Soto's claim on November 18, 1991. On August 28, 1992, the Commission issued its order finding that Soto had no permanent physical impairment from his May 1, 1988, injury, and that Soto was entitled to additional total temporary disability income benefits from March 17, 1990, to October 4, 1990. In the August 28, 1992, order, the Commission adopted the findings of fact, conclusions of law and proposed order submitted by the referee in the matter. The referee found considerable conflicting medical evidence regarding permanent impairment, but found Soto's testimony lacked credibility. The referee gave more weight to the records and opinions of certain doctors; in particular, he gave more weight to the

records and opinions of Dr. Bowman than to those of Dr. Ward.

Soto filed a motion to reconsider the August 28, 1992 order. On February 4, 1994, the Commission denied the motion to reconsider, and Soto filed his notice of appeal to this Court on March 15, 1993.

## D. STANDARD OF REVIEW

■ We limit the scope of our review to questions of law and determinations of whether the Industrial Commission's findings of fact are supported by substantial, competent evidence. Idaho Const. Art. V § 9; I.C. § 72–732. Determinations of permanent impairment and temporary disability are questions of fact for the Industrial Commission. If conflicting evidence exists, this Court will not overturn factual findings supported by substantial and competent evidence. *Aldrich v. Lamb–Weston, Inc.*, 122 Idaho 361, 363, 834 P.2d 878, 880 (1992). This Court does not scrutinize the weight and credibility of the evidence relied upon by the Commission. *Roberts v. Kit Mfg. Co.*, 124 Idaho 946, 947, 866 P.2d 969, 970 (1993). We will disturb the Commission's findings regarding weight and credibility only if they are clearly erroneous. *Id.*

## II.

## THE COMMISSION'S FINDING OF NO PERMANENT IMPAIRMENT IS SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE

Before analyzing whether substantial and competent evidence supports the Commission's finding of no impairment, we are obliged to consider what constitutes "competent" evidence for a permanent impairment evaluation under I.C. § 72–424.

■ Soto invites us to conclude that medical records and opinions obtained from doctors for purposes of general diagnosis and treatment are not competent evidence in determining permanent impairment. Soto argues that the only competent expert opinion and medical record evidence before the Commission came from Dr. Ward, who examined Soto for the specific purpose of giving a

permanent impairment rating under AMA guidelines. We disagree.

■ I.C. § 72–424 reads as follows:

**72–424. Permanent impairment evaluation.**—"Evaluation (rating) of permanent impairment" is a medical appraisal of the nature and extent of the injury or disease as it affects an injured employee's personal efficiency in the activities of daily living, such as self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized activities of bodily members.

In making the "medical appraisal" of an injury's effect on daily living activities, there is a potentially wide spectrum of material and relevant evidence worthy of consideration, beyond the particular opinion of a physician asked to give an impairment rating. Such evidence, whether it tends to refute or establish the existence of an impairment, has a place in the Commission's effort to ascertain truth. Moreover, evidence impeaching a claimant's credibility, though coming from non-medical sources, need not be ignored in a permanent impairment hearing. Such evidence is particularly relevant where, as here, the claimant relies heavily on complaints of pain in asserting impairment.

■ Furthermore, physician opinions are not binding on the Commission, but are advisory. To be sure, the expert opinion of a physician who gives a permanent impairment rating pursuant to AMA guidelines may prove more helpful to the Commission or worthy of greater weight than that of a treating physician not asked to give an opinion on impairment. *See Pomerinke v. Excel Trucking Transp.*, 124 Idaho 301, 306–07, 859 P.2d 337, 342–43 (1993) (Commission did not err in referring to AMA guidelines which are reliable authority in area of disability rating). It does not follow, however, that reliable records and opinions of treating physicians are worthy of no consideration. "It would be an improper invasion into the fact finding discretion of the Industrial Commission for this Court to hold that the commission must always give greater weight to one party's medical experts over the other." *Poss v. Meeker Mach. Shop*, 109 Idaho 920, 924–25, 712 P.2d 621, 625–26 (1985). We

hold that the Commission, in conducting a permanent impairment evaluation, is not limited to record or opinion evidence of a physician requested to give a permanent impairment rating.

■ Having reached the foregoing conclusion, and upon reviewing the record, we conclude that the Commission's finding of no permanent impairment is supported by substantial and competent evidence. The Commission considered numerous medical records from nearly a dozen physicians. The Commission found Soto's testimony lacked credibility. Even Dr. Ward, who assigned a whole body impairment rating of 17%, based his rating in part on Soto's subjective complaints of back pain. The Commission gave particular weight to the records and opinions of Dr. Bowman, who wrote as follows:

> In my opinion this gentlemen sustained a contusion-sprain to his back. He has been treated adequately, completely. His symptoms are overdetermined, there is not objective evidence of physical impairment from this alleged injury nor is there indication that he could not, on an objective basis, return to full activity including that of his regular job.

We will not re-weigh the evidence, and do not find the Commission's weight and credibility determinations regarding permanent impairment to be clearly erroneous.

## III.

### THE COMMISSION'S DENIAL OF TEMPORARY DISABILITY BEFORE MARCH 17, 1990 IS NOT SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE

On February 1, 1990, Simplot did not allow Soto to return to work because of a work restriction note in Soto's file from Dr. Kennedy. In his findings of fact and conclusions of law, the referee stated that Dr. Kennedy's work restriction was not presented as evidence, and there was no other evidence to explain why Dr. Kennedy wanted Soto restricted from work. The referee then concluded that "more likely than not [ ] Claimant was mistakenly restricted from returning to

work." This conclusion is not supported by substantial competent evidence.

■ We have held that there must be medical testimony with a reasonable degree of medical probability to support a worker's compensation claim. *E.g., Fisher v. Bunker Hill Co.,* 96 Idaho 341, 528 P.2d 903 (1974). In this regard, "probable" is defined as "having more evidence for than against." *Id.* 96 Idaho at 344, 528 P.2d at 906. Where hearsay evidence is admitted without objection in proceedings before the Commission, it properly may be considered in determining the facts. *Id.*

■ Although Dr. Kennedy's work restriction note was not submitted into evidence, its existence was admitted by Simplot's company nurse, and her deposition *was* among the evidence the Commission considered. Dr. Kennedy's note, including the testimony of the company nurse, is "more evidence for than against" the work restriction dating from December 28, 1990. On the other hand, Simplot provided no substantial evidence to counter Dr. Kennedy's admitted work restriction. Dr. Schossberger issued another work restriction on March 17, 1990. We have found nothing in the record indicating a change of Soto's condition for the better in the weeks between the two work restrictions. Hence, the record reveals two doctors' work restrictions on December 28, 1989 and March 17, 1990, respectively, and nothing showing Soto's condition improved in the interim. The referee's conclusion that Soto was "mistakenly" restricted from work is not supported by the evidence, and thus, the denial of TTD benefits before March 17, 1990 is not supported by the evidence.

This case is distinguishable from *Sykes v. C.P. Clare & Co.,* 100 Idaho 761, 605 P.2d 939 (1980). There, the worker's compensation claimant submitted to the Commission as exhibits a physician's report from the company physician and two letters from a doctor. The claimant then testified as to statements made to him by his doctors indicating his physical impairment, but did not support his testimony with doctor's reports, depositions or a physician's oral testimony. This Court concluded that the claimant's testimony did not constitute medical testimony which is

necessary to support his claim, and as a result, he failed to satisfy the burden required to establish eligibility for TTD benefits. *Id.* 100 Idaho at 763, 605 P.2d at 941.

By contrast, Soto did not rely solely on his own hearsay testimony of doctors' statements. Moreover, there is no dispute that Simplot refused to allow Soto to return to work because of a doctor's work restriction in Soto's employment file. Under these circumstances, we believe the burden is on Simplot to present some evidence regarding the time in question to counter the doctor's work restriction.

## IV.

### CONCLUSION

We affirm the Commission's finding of no permanent impairment from the May 1, 1988 injury. However, the Commission's denial of TTD benefits before March 17, 1990, is not supported by substantial competent evidence. Accordingly, we reverse this finding and award TTD benefits from February 1, 1990, to March 17, 1990.

Simplot seeks an award of costs and attorney fees pursuant to Idaho Appellate Rule 11.1. In view of our partial reversal, and because we perceive good faith arguments undergirding Soto's positions on appeal, we decline to consider availability of Appellate Rule 11.1 sanctions.

McDEVITT, C.J., JOHNSON and TROUT, JJ., and REINHARDT, J. Pro Tem, concur.