890 P.2d 732

**Donald E. LANGLEY, Claimant–Appellant,**

v.

**STATE of Idaho, INDUSTRIAL SPECIAL INDEMNITY FUND, Defendant–Respondent.**

**No. 20914.**

Supreme Court of Idaho, Boise, December 1994 Term.

Feb. 17, 1995.

Rehearing Denied March 23, 1995.

Coughlan & Coughlan, Boise, for appellant. Glenn A. Coughlan argued.

Mallea & Scrivner, Boise, for respondent. Wesley L. Scrivner argued.

McDEVITT, Chief Justice.

## BACKGROUND AND PRIOR PROCEEDINGS

Claimant Donald E. Langley (Langley) was employed by Champion Home Builders (Champion) of Weiser, Idaho, from September of 1976 until June 29, 1990. Langley first experienced trouble with his right knee on May 8, 1987, while working for Champion as a welder. Langley was eventually examined by W. Steven Rudd, M.D. (Dr. Rudd), on December 7, 1987, at which time a peripheral tear of the medial meniscus was diagnosed and arthroscopic surgery was recommended. Langley declined surgery at that time due to uncertainty about insurance coverage.

In 1989, Langley filed a Notice of Injury and Claim for Benefits, alleging he had contracted emphysema from the inhalation of smoke and fumes while welding for Champion since 1976.

Langley continued to have trouble with his knee throughout this time, and made an appointment for February 7, 1990, with Dr. Rudd. The day before his scheduled appointment, Langley tripped on some hoses on the floor in the paint shop, which incident was witnessed by his supervisor. However, in describing his symptoms to Dr. Rudd the following day, Langley did not mention the hose-tripping incident. Dr. Rudd once again recommended surgery.

Langley filed a Notice of Injury and Claim for Benefits relative to the February 6 incident, and underwent arthroscopic surgery on February 16, 1990. Following three months

of physical therapy, Langley was released by Dr. Rudd to return to work on May 21, 1990. On June 29, 1990, he was terminated by Champion because he was unable to "perform up to par the responsibility required in his job."

Langley's claim for workers' compensation benefits was set for hearing before the Industrial Commission (the Commission) on February 16, 1993. Immediately before the hearing, Langley settled with Champion's surety. The hearing then proceeded solely against the State of Idaho Industrial Special Indemnity Fund (ISIF). At the hearing, ISIF did not challenge Langley's claim that a compensable industrial accident occurred in May of 1987.

An Industrial Commission Referee (Referee) entered findings of fact, conclusions of law, and a proposed order on August 3, 1990, following two days of testimony. The Referee found that Langley suffered a right knee injury on May 8, 1987, which injury arose out of and in the course of his employment with Champion. However, based on Dr. Rudd's testimony,[1] the Referee further found that Langley failed to establish a causal link between the February 6, 1990, incident and the cartilage tears repaired in the February 16, 1990, surgery. Thus, the Referee concluded, Langley did not prove that on February 6, 1990, he suffered a compensable accident and resulting injury. The Referee also concluded that Dr. Rudd's testimony did not support a finding that the aggravation of Langley's right knee injury from repetitive bending and twisting motions constituted an industrial accident within the meaning of I.C. § 72–102(15)(b); and that Langley failed to prove, to a reasonable degree of medical probability, a causal relationship between his respiratory problems and his work environment, and thus failed to prove that his respiratory problems constituted an occupational disease under I.C. § 72–102(18).

After concluding that the May 8, 1987, injury to Langley's right knee was the only compensable injury established by Langley in the record, the Referee analyzed the alleged liability of the ISIF. The Referee

---

1. Dr. Rudd's testimony consisted of the case notes he made in the course of treating Langley, along with a written response to questions posed in a letter from Langley's counsel.

noted that, in order to establish ISIF liability pursuant to I.C. § 72–332, Langley had to prove that prior to May of 1987 he had a permanent physical impairment which combined with the effects of the industrial accident to cause total and permanent disability. Based on the evidence presented, the Referee concluded that the only preexisting conditions Langley established were a hiatal hernia diagnosed in June of 1983, and a 10 percent hearing loss. The Referee further concluded that neither Langley's hearing loss nor hiatal hernia presented a serious hindrance or obstacle to Langley's employment prior to the May 1987 industrial accident, and thus the conditions did not qualify as preexisting permanent physical impairments under I.C. § 72–332(2). In its Order on Reconsideration, the Commission found that, although Langley's respiratory problems were a preexisting condition, the condition did not constitute a serious hindrance or obstacle to his employment prior to the May 1987 accident.

Based on the foregoing, the Commission enter an order on August 3, 1993, denying Langley's claim against ISIF. Langley filed a Motion for Reconsideration pursuant to I.C. § 72–718 on August 16, 1993. The Commission filed its Order on Reconsideration September 27, 1993, denying Langley's motion.

### ANALYSIS

█ When reviewing Industrial Commission decisions on appeal, this Court reviews questions of fact only to determine if there is substantial and competent evidence to support the findings of the Commission, but exercises free review over questions of law. Idaho Const. art. V, § 9; I.C. § 72–732; *Dewey v. Merrill,* 124 Idaho 201, 858 P.2d 740 (1993).

### I.

### EVIDENTIARY ERRORS

█ The first issue Langley assigns on appeal is whether the Commission erred in excluding several of his proffered exhibits from admission into evidence. When issues cited on appeal are not supported by propositions of law, authority, or argument, they will not be considered. *Phipps v. Phipps,* 124 Idaho 775, 780, 864 P.2d 613, 618 (1993); *Murray v. Farmers Ins. Co.,* 118 Idaho 224, 226, 796 P.2d 101, 103 (1990); *In re the Estate of Freeburn,* 101 Idaho 739, 741, 620 P.2d 773, 775 (1980); I.A.R. 35. As ISIF noted in its responsive brief, Langley failed to support this assignment of error with either argument or authority. Therefore, we decline to address it.

### II.

### THE COMMISSION'S FINDINGS OF FACT ARE SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE

█ When assessing whether the Commission's findings of fact are supported by substantial and competent evidence, this Court does not try the matter anew by weighing the evidence and acting akin to a trial court, nor are we concerned with whether we would have reached the same conclusion based upon the evidence presented. *Pomerinke v. Excel Trucking Transp., Inc.,* 124 Idaho 301, 305, 859 P.2d 337, 341 (1993). Rather, we construe the facts in a light most favorable to the prevailing party and only disturb the Commission's findings if we conclude they are clearly erroneous. I.C. § 72–732(1); *Roberts v. Kit Mfg. Co.,* 124 Idaho 946, 947, 866 P.2d 969, 970 (1993).

### A. Langley failed to prove that a compensable accident occurred on February 6, 1990.

█ Based on the evidence before it, the Commission concluded that, while Langley may have tripped over a pile of hoses on the floor while working February 6, 1990, that incident did not rise to the level of a compensable, injury-causing accident as defined by I.C. § 72–102(15).[2]

2. **72–102. Definitions.**— ...

.... (15) "Injury" and "accident."

(a) "Injury" means a personal injury caused by an accident arising out of and in the course of

■ In order to qualify as a compensable accident, a mishap or event must result in "violence to the physical structure of the body." I.C. § 72–102(15)(c). A claimant must provide medical testimony that supports a claim for compensation to a reasonable degree of medical probability. *Cole v. Stokely,* 118 Idaho 173, 175, 795 P.2d 872, 874 (1990).

Langley argues that, under this Court's ruling in *Pierstorff v. Gray's Auto. Shop,* 58 Idaho 438, 74 P.2d 171 (1937), the Commission must accept as true his uncontroverted account of the hose-tripping incident. However, that case is inapplicable here. Unlike the claimant in *Pierstorff,* Langley's interpretation of the physical consequences of the February 6 incident was controverted by his own medical expert.

The Commission did not discount Langley's testimony that the hose-tripping event occurred. Rather, it concluded that the event did not rise to the level of a compensable, injury-causing accident because Langley failed to provide any proof, to a reasonable degree of medical probability, that the cartilage damage Dr. Rudd surgically repaired on February 16, 1990, was causally related to the February 6 hose-tripping incident. In fact, in a letter to Langley's counsel, which Langley offered in support of his claim, Dr. Rudd expressly stated that:

> I personally cannot ascribe knee damage to his knee to any one single activity or event. Furthermore, Mr. Langley at no time described for me any specific injury event in accurate enough detail to reliably ascribe Mr. Langley's injuries to that particular event.

This passage is remarkably similar to the facts presented in *Roberts v. Kit Mfg. Co.,* 124 Idaho at 947–48, 866 P.2d at 970–71. In that case, the Commission found that the claimant failed to prove the occurrence of an accident within the meaning of I.C. § 72–102(15). The Commission based its finding on statements contained in a letter from the claimant's doctor to the claimant's attorney, in which the doctor voiced uncertainty as to the cause of the claimant's injury. We affirmed.

Like the claimant in *Roberts,* Langley failed to carry his burden of proof before the Commission and has likewise failed to demonstrate on appeal that the Commission's view of the evidence is clearly erroneous. Thus, resolving all reasonable inferences in a light most favorable to ISIF, we conclude that the Commission's finding is supported by substantial and competent evidence.

**B. Langley failed to prove the occurrence of *any* compensable accident subsequent to May of 1987.**

■ The next issue Langley cites on appeal is whether the Commission erred in finding that he failed to prove the occurrence of any compensable accident within the meaning of I.C. § 72–102(15) subsequent to the knee injury he sustained in May of 1987.

■ A claimant bears the burden of proving that an injury-causing accident occurred by proving that an unexpected, undesigned and unlooked for mishap or untoward event took place. *Nelson v. Ponsness–Warren Idgas Enterprises,* 126 Idaho 129, 879 P.2d 592 (1994).

Langley argues that the Commission erred in concluding that Dr. Rudd's testimony did not support a finding that the damage repaired in the February 16, 1990, surgery was caused by a series of micro trauma injuries to his right knee subsequent to the May 1987 accident, and that the Commission's error was based on a misinterpretation of our previous holding in *Brooks v. Standard Fire Ins. Co.,* 117 Idaho 1066, 793 P.2d 1238 (1990).

In *Brooks,* this Court upheld a Commission ruling that found Brooks' refracture of his

---

any employment covered by the workmen's compensation law.

(b) "Accident" means an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury.

(c) "Injury" and "personal injury" shall be construed to include only an injury caused by an accident, which results in violence to the physical structure of the body. The terms shall in no case be construed to include an occupational disease and only such nonoccupational diseases as result directly from an injury.

wrist was a compensable injury under I.C. § 72–102(15). In *Brooks,* the claimant provided expert medical testimony that, after an earlier fracture healed, his wrist was re-fractured by a series of minor injuries to the wrist which occurred while unloading trucks in the course of his employment.

This Court recently clarified our *Brooks* holding in *Nelson v. Ponsness–Warren.* In *Nelson,* the Commission ruled that a series of micro traumas caused by the repetitive motions of Nelson's job constituted an industrial accident under *Brooks.* In overruling the Commission's decision, this Court held that *Brooks* does not stand for the proposition that a series of micro traumas constitutes an accident.

In *Brooks,* the claimant provided medical testimony that he suffered a *new* injury after the old injury healed. In addition, the claimant provided medical testimony that the new injury was the result of a series of small stress fractures that occurred while unloading freight. Furthermore, the claimant provided lay testimony which pinpointed the injury to a particular month when the pain noticeably worsened while working.

In contrast, Nelson had been diagnosed with carpal tunnel syndrome in 1980 but refused corrective surgery. Her symptoms worsened soon after beginning work for Ponsness–Warren in October of 1988, where her job required repetitive tightening of screws. She finally consented to surgery on both hands in May of 1989. However, unlike the claimant in *Brooks,* Nelson did not provide any medical evidence connecting the aggravation of her carpal tunnel syndrome to "an unexpected, undesigned, and unlooked for mishap, or untoward *event,* reasonably identifiable as to the time when and the place where it occurred." *Nelson,* 126 Idaho at 133, 879 P.2d at 596 (quotations omitted).

The facts in the present appeal are more analogous to those in *Nelson* than *Brooks.* Like the claimant in *Nelson,* and unlike the claimant in *Brooks,* Langley did not provide any expert medical opinion evidence connecting his injured condition to a post–1987 mishap or event. To the contrary, Dr. Rudd expressly stated that Langley never described any specific event in sufficient enough detail to enable Dr. Rudd to ascribe Langley's torn cartilage to a particular event. Under the circumstances here, aggravation of Langley's existing injury was *not* an unexpected, undesigned, unlooked for mishap or untoward event. It was a predictable, albeit unfortunate, consequence of not having the damage repaired earlier.

We conclude that the Commission's finding is based on substantial and competent. evidence. Thus, it is not clearly erroneous and will not be disturbed on appeal.

**C.  Langley failed to prove that his respiratory condition is an occupational disease.**

An occupational disease is one that is "due to the nature of an employment in which the hazards of such disease actually exist, are characteristic of, and peculiar to the trade, occupation, process, or employment ..." I.C. § 72–102(18)(a). "Contracted" and "incurred," when referring to an occupational disease, are deemed equivalent to "arising out of and in the course of employment." I.C. § 72–102(18)(b) (quotations omitted).

■ As with industrial accident claims, an occupational disease claimant has the burden of proving, to a reasonable degree of medical probability, a causal connection between the condition for which compensation is claimed and occupational exposure to the substance or conditions which caused the alleged condition. *Hagler v. Micron Technology, Inc.,* 118 Idaho 596, 598, 798 P.2d 55, 57 (1990).

■ The Commission based its conclusion that Langley's respiratory condition does not qualify as an occupational disease on medical records Langley provided from four doctors, which detailed his complaints of respiratory problems from 1978 through 1990. While all of the doctors indicated, to varying degrees, that Langley's work environment may have irritated his asthma, none stated that, to a reasonable degree of probability, his shortness of breath was causally related to his work environment. Thus, the Commission's conclusion that Langley failed to prove that his asthmatic condition is causally related to his work environment is supported by sub-

stantial and competent evidence and will not be disturbed on appeal.

### D. Langley failed to prove that he suffered from a permanent physical impairment prior to May of 1987.

■ Langley argues that the Commission erred in finding that he failed to prove that he suffered from a permanent physical impairment prior to the May 1987 accident.

■ In order to establish ISIF liability under I.C. § 72–332(1), a claimant must prove that, prior to incurring an injury or occupational disease, he was suffering from a permanent physical impairment. As used in I.C. § 72–332(1), the term "permanent physical impairment" incorporates the definition of "permanent impairment" in I.C. § 72–422,[3] with the added requirement that the condition be:

> [o]f such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining re-employment if the claimant should be employed. This shall be interpreted subjectively as to the particular employee involved, however, the mere fact that a claimant is employed at the time of the subsequent injury shall not create a presumption that the pre-existing permanent physical impairment was not of such seriousness as to constitute a hindrance or obstacle to obtaining employment.

I.C. § 72–332(2).

This statutory requirement has been translated into a prima facie case, consisting of four elements, for which the claimant has the burden of proof:

1) That the claimant has a preexisting physical impairment

2) That the preexisting condition was manifest

3) That the preexisting impairment was a subjective hindrance to obtaining employment or reemployment

4) That the alleged impairment, when combined with a subsequent injury or occupational disease, causes total disability.

*Garcia v. J.R. Simplot, Co.,* 115 Idaho 966, 968, 772 P.2d 173, 175 (1989), *overruled on other grounds by Archer v. Bonners Ferry Datsun,* 117 Idaho 166, 786 P.2d 557 (1990).

This Court has long held that a "permanent impairment" as defined by I.C. § 72–422 and as incorporated by reference in I.C. § 72–332(2) as a "permanent physical impairment" is confined to physical disabilities evidenced by physical manifestations. *Red Lion v. Industrial Special Indem. Fund,* 122 Idaho 464, 466–67, 835 P.2d 1275, 1277–78 (1992); *Mapusaga v. Red Lion Riverside Inn,* 113 Idaho 842, 846–48, 748 P.2d 1372, 1376–78 (1987); *Hartley v. Miller–Stephan,* 107 Idaho 688, 690, 692 P.2d 332, 334 (1984).

■ Contrary to Langley's assertion, the Commission considered each of his alleged disabilities. However, in accordance with this Court's prior case law, the Commission correctly rejected Langley's contention that his learning disabilities should be considered preexisting permanent physical impairments. *Red Lion,* 122 Idaho at 466–67, 835 P.2d at 1277–78. Although initially the Commission found that only the hiatal hernia and a slight hearing loss preexisted the May 8, 1987, industrial accident, in its Order on Reconsideration the Commission also included Langley's respiratory problems. The Commission based its findings regarding the manifestation dates for each physical condition on the evidence submitted by claimant.[4] Thus, the Commission's finding that only Langley's hiatal hernia, hearing loss, and respiratory condition pre-dated the May 1987 industrial accident was based on substantial and competent evidence.

Next the Commission considered whether either Langley's hernia, hearing loss, or respiratory condition constituted a serious hindrance or obstacle to his employment prior

---

3. **72–422. Permanent impairment.**—"Permanent impairment" is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation. . . .

4. Claimant's Exhibits B, D, L, N, O, P, R; Langley's testimony, Tr. pp. 102; 112; 129–130.

to May of 1987. In *Archer v. Bonners Ferry Datsun*, 117 Idaho at 172, 786 P.2d at 563, this Court held that the test for determining whether a preexisting physical condition constitutes a hindrance or obstacle to employment under I.C. § 72–332(2) is whether the condition constituted an actual hindrance for the *particular* claimant prior to the industrial accident.

In concluding that none of Langley's preexisting conditions constituted a serious hindrance or obstacle to Langley's employment, the Commission relied on testimony by Langley and his co-workers that prior to the May 8, 1987, accident, Langley was a hard worker with no noticeable handicap or disabilities. Thus, the Commission's finding that Langley failed to prove that he suffered from a permanent physical impairment as defined by I.C. § 72–332(2) was based on substantial and competent evidence and will not be disturbed on appeal.

## CONCLUSION

Based on the foregoing, we conclude that the Commission's findings are supported by substantial and competent evidence. We therefore affirm the Commission's decision denying Langley's claim against ISIF. ISIF is awarded costs on appeal pursuant to I.A.R. 40.

JOHNSON, TROUT and SILAK, JJ., and YOUNG, J. Pro Tem., concur.