997 P.2d 621

**Joyce K. JONES, Claimant–Respondent,**

v.

**EMMETT MANOR, Employer, Defendant–Appellant.**

No. 25317.

Supreme Court of Idaho, Boise, January 2000 Term.

March 31, 2000.

Lawrence G. Sirhall, Jr., Boise, for appellant.

Hugh Mossman, Boise, for respondent.

SCHROEDER, Justice.

Emmett Manor appeals the decision of the Industrial Commission awarding worker's compensation benefits to Joyce Jones (Jones).

## I.

### BACKGROUND & PRIOR PROCEEDINGS

Jones began work at Emmett Manor as an aide in May of 1995. She bathed, cleaned, dressed and generally cared for the eight patients living at Emmett Manor. She also worked part-time for the Department of Health and Welfare, performing general cleaning tasks.

Jones claims that she injured her back on two separate occasions while employed at Emmett Manor. The first injury occurred in September of 1995 while she was lifting a patient. Her employer disputes this fact, maintaining that the patient whom Jones allegedly helped move was not at Emmett Manor at the time. The employer supported this assertion with discharge records which indicated that the patient was transferred on August 31, 1995, prior to the time Jones claimed the injury occurred. However, the Commission made the following observation in its Findings of Fact: "The original resident Admission and Discharge Register ostensibly indicates that [the patient] left Emmett Manor on '8/31/95,' however, the entry may have been altered from 9/31/95." This observation by the Commission is important because the Commission was required to make credibility determinations between Jones and the employer.

After the first injury, Jones immediately informed her employer that she had hurt her back, but she continued to work and did not seek treatment for this incident. According to Jones, the pain decreased with time.

The second injury occurred on November 20, 1995, when Jones was showering an Alzheimer's patient who became confused and sat down in the shower, causing Jones to fall. Jones experienced a tearing sensation in her lower back. She told her employer about this incident. The pain increased, and Jones decided to see a doctor in January of 1996. Jones and her employer had a dispute about Jones' desire to see a doctor. As a result of this dispute, Jones either quit or was fired on January 4, 1996. At about this time the employer discovered that it did not have worker's compensation insurance.

Dr. Barclay first saw Jones on January 8, 1996. He diagnosed lumbrosacral spine somatic dysfunction resulting from lifting a patient. Dr. Barclay hospitalized Jones briefly, treating her with prescription medications and traction. Jones was not employed between January of 1996 and June of 1996. However, she did work in her garden during this time period and made tacos at the Emmett Cherry Festival in June. She returned to work in August of 1996, when Dr. Barclay released her to return to work.

Jones filed a worker's compensation complaint against her employer, and a hearing was conducted by a referee. Jones testified and supported her claim with medical records. No doctor testified. Based on the evidence submitted to the referee, the Commission found that Jones was entitled to $4,695.41 in medical benefits. The Commission relied on the medical records and Jones' testimony to determine causation. The total temporary disability benefits covered the time from January 8, 1996, through August 9,

1996. Because the employer did not have its insurance obligations covered under the worker's compensation act at the time of the accident, the Commission awarded attorney fees, costs and a penalty against the employer pursuant to I.C. § 72–210. The employer appealed, asserting that there was not substantial, competent evidence to support the Commission's decision. The employer maintains that Jones was not credible and challenges the Commission's use of medical records without medical testimony to determine causation.

## II.

## STANDARD OF REVIEW

The issues raised in this appeal involve both questions of law and questions of fact. Whether a physician's records, without additional expert medical testimony, may satisfy the requirement that medical evidence be provided is a question of law. Whether those records contain adequate information to support the Commission's finding is a question of fact. Therefore, the question of whether the evidence was sufficient to support the Commission's decision is a mixed question of law and fact. The right to an award of attorney fees pursuant to I.C. § 72–210 is strictly a question of law in this case.

■ When reviewing Industrial Commission decisions on appeal, the Court reviews questions of fact only to determine if there is substantial and competent evidence to support the findings of the Commission, but exercises free review over questions of law. IDAHO CONST. art. V, § 9; *Langley v. State*, 126 Idaho 781, 784, 890 P.2d 732, 735 (1995).

## III.

## THERE WAS SUBSTANTIAL AND COM-PETENT EVIDENCE TO SUPPORT THE INDUSTRIAL COMMISSION'S AWARD OF MEDICAL BENEFITS.

A. **Physicians' Medical Records, Without Additional Expert Medical Testimony, May Be Sufficient to Satisfy the Requirement that Medical Testimony Be Provided on the Issue of Causation.**

The Commission found that the injury to Jones arose in the course of employment,

basing this finding upon Jones' testimony and the medical records of Dr. Barclay. Dr. Barclay diagnosed lumbrosacral spine somatic dysfunction and listed the cause as "lifting patient." The employer argues that there must be medical testimony to establish causation of the injury to a reasonable degree of medical probability. The employer also asserts that the medical records do not contain any opinion to a reasonable degree of probability.

A threshold question is whether Jones' medical records constituted substantial, competent evidence to support the claim or whether Jones was required to present a medical opinion by oral testimony. In *Dean v. Dravo Corporation*, 95 Idaho 558, 560–61, 511 P.2d 1334, 1336–37 (1973), the Court made the statement upon which Emmett Manor relies in its contention that oral medical testimony was necessary:

> In order to recover in Workmen's Compensation cases there must be medical testimony supporting the claim for compensation with a reasonable degree of medical probability. *Comish v. Simplot Fertilizer Co.*, 86 Idaho 79, 383 P.2d 333 (1963); *Clark v. Brennan Construction Co.*, 84 Idaho 384, 372 P.2d 761 (1962); *Laird v. State Highway Department*, 80 Idaho 12, 323 P.2d 1079 (1958).

The medical testimony in *Dean v. Dravo Corp.* established a possibility, not a probability, that the claimed injury was caused by an accident arising out of the employment. Consequently, the award of worker's compensation was vacated. It is clear that the reference to medical "testimony" in *Dean v. Dravo Corp.* was not necessary to the decision. The thrust of the holding was that the medical testimony that was presented did not establish the cause of injury to a medical probability.

Language in *Paulson v. Idaho Forest Industries*, 99 Idaho 896, 591 P.2d 143 (1979), relying upon *Dean v. Dravo Corp.*, suggests that medical testimony must be submitted in oral form. In *Paulson*, the Commission had medical reports from two doctors (Vincent

and Bozarth), as well as the oral testimony of a third doctor, Dr. Cone. The Court relied upon the oral testimony of Dr. Cone, quoting the doctor's testimony at length in the opinion. The Court wrote: "Allowing that proof of such a causal relationship requires expert medical testimony, *see Dean v. Dravo Corp.,* 95 Idaho 558, 511 P.2d 1334 (1973), the testimony given by Dr. Cone will suffice." 99 Idaho at 900, 591 P.2d at 147. In *Paulson,* there was oral testimony of Dr. Cone to support the claim. The question was whether that testimony established the necessary causal connection for the payment of benefits or whether it simply established a possibility that the condition was work related. The adequacy of medical records as medical testimony was not decided by the Court.

The requirement of medical testimony was repeated in *Soto v. Simplot,* 126 Idaho 536, 540, 887 P.2d 1043, 1047 (1994): "We have held that there must be medical testimony with a reasonable degree of probability to support a worker's compensation claim. E.g., *Fisher v. Bunker Hill Co.,* 96 Idaho 341, 528 P.2d 903 (1974)." However, in *Soto* the Court held that medical records were competent evidence in determining permanent impairment:

> Soto invites us to conclude that medical records and opinions obtained from doctors for purposes of general diagnosis and treatment are not competent evidence in determining permanent impairment.
>
> \* \* \*
>
> In making the "medical appraisal" of an injury's effect on daily living activities, there is a potentially wide spectrum of material and relevant evidence worthy of consideration, beyond the particular opinion of a physician asked to give an impairment rating. Such evidence, whether it tends to refute or establish the existence of an impairment, has a place in the Commission's effort to ascertain truth.

*Soto v. Simplot,* 126 Idaho at 539, 887 P.2d at 1046.

In *Langley v. State,* 126 Idaho 781, 786–87, 890 P.2d 732, 737–38 (1994), the Court approved use of medical records as competent evidence to defeat a claim for worker's compensation:

> The Commission based its conclusion that Langley's respiratory condition does not qualify as an occupational disease on medical records Langley provided from four doctors, which detailed his complaints of respiratory problems from 1978 through 1990. While all of the doctors indicated, to varying degrees, that Langley's work environment may have irritated his asthma, none stated that, to a reasonable degree of probability, his shortness of breath was causally related to his work environment. Thus, the Commission's conclusion that Langley failed to prove that his asthmatic condition is causally related to his work environment is supported by substantial and competent evidence and will not be disturbed on appeal.

Medical records were clearly thought to be competent evidence on the question of causation in *Langley.*

In *Politte v. Idaho Department of Transportation,* 126 Idaho 270, 882 P.2d 437 (1994), the Court upheld the determination of the Commission that a letter from a physician was not substantial evidence sufficient to overcome the presumption that an injury arose from the employee's employment. However, the rejection of the letter was based upon the lack of reliability in the contents of the letter rather than the form of the evidence.

The adequacy of medical evidence has presented itself in various formats. In *Sykes v. C.P. Clare and Company,* 100 Idaho 761, 605 P.2d 939 (1980), the Court stated that "in workmen's compensation cases there must be medical testimony supporting the claim for compensation with a reasonable degree of medical probability." *Id.* at 764, 605 P.2d at 942. The Court also made this statement:

> Workmen's compensation cases, because of their medical aspects, depend upon knowledge neither expected nor possessed by lay witnesses, and the basis for any award must rest upon and be supported by medical testimony. *Comish v. J.R. Simplot Fertilizer Co.,* 86 Idaho 79, 383 P.2d 333 (1963).

*Sykes v. C.P. Clare and Company,* 100 Idaho at 764, 605 P.2d at 942.

A review of the evidence in *Sykes* indicates that the Court was not necessarily referring to oral testimony when it commented on the requirement of medical testimony:

> Sykes testified as to statements made to him by his doctors indicating his physical impairment, but did not support his testimony with doctor's reports, depositions or a physician's oral testimony. His testimony does not constitute medical testimony which is necessary to support his claim for compensation.

*Id.* at 763, 605 P.2d at 941.

Again, the problem in *Sykes* was the lack of evidence, not the form of the evidence.

The line of cases referring to the requirement of medical testimony to establish causation seems to be in response to the statement in *Walker v. Hogue*, 67 Idaho 484, 185 P.2d 708 (1947), that, "the recent trend and overwhelming weight of opinion clearly is to regard medical evidence as highly desirable but not essential. Hence, awards have been repeatedly upheld without a single shred of medical evidence." *Id.* at 490, 185 P.2d at 711.

While *Hogue* has not been explicitly overruled on this proposition, it appears that the reference in subsequent cases to the requirement of medical testimony to establish causation is in response to the idea expressed in *Hogue* that the Commission may decide cases without medical evidence. It is clear today that the Commission may not decide worker's compensation cases without medical evidence.

In *Fisher v. Bunker Hill Company*, 96 Idaho 341, 528 P.2d 903 (1974), the Court upheld the use of written medical records to establish a *prima facie* case in a default proceeding, noting that "[w]here hearsay evidence is admitted without objection, it properly may be considered in determining the facts." *Id.* at 344, 528 P.2d at 906. Since *Fisher* utilized medical records but made reference to the requirement of "medical testimony," citing *Dean v. Dravo Corp.*, it is clear that the Court did not always mean that "medical testimony" must be oral testimony.

■ The question in this case is whether the language in *Dean v. Dravo Corp.* and

*Paulson v. Idaho Forest Industries*, as well as the other cases noted, required Jones to present oral testimony of a doctor at the hearing or by deposition or whether the medical records were sufficient. Requiring oral or deposition testimony in every worker's compensation case would impose an unnecessary procedural and financial burden on injured workers. There are cases in which deposition testimony or oral testimony is necessary to meet the substantial and competent evidence burden, but this does not mean that medical reports are inadequate *per se* when there is no contrary medical evidence. To the extent *Dean v. Dravo Corp.* and *Paulson v. Idaho Forest Industries* suggest a requirement of oral medical testimony in every case, the suggestion is disavowed.

### B. The Physician's Records and Jones' Testimony Constituted Substantial and Competent Evidence to Prove Causation.

■ The standard for fixing causation of an injury is that evidence must be presented to establish causation to a reasonable degree of medical probability. *Langley v. State*, 126 Idaho 781, 785, 890 P.2d 732, 735 (1995). The claimant bears the burden of proving that there was a probable causal link between her employment and the injury. *Roberts v. Kit Mfg. Co., Inc.*, 124 Idaho 946, 947, 866 P.2d 969, 970 (1994). The Commission found that the medical reports in this case, together with the testimony of the claimant, established causation to a reasonable degree of medical probability. The question is whether the evidence which led to this result was substantial and competent evidence; that is, is it evidence that a reasonable mind would accept to support the conclusion? *Warden v. Idaho Timber Corp.*, 132 Idaho 454, 456–457, 974 P.2d 506, 508–509 (1999).

■ Jones testified that she injured her back by lifting a patient, and that she told her employer of this injury at the time it occurred. She was treated by Dr. Barclay who states in his medical records that the injury was brought about by "lifting patient." The Commission found that Jones' "demeanor at the hearing was forthright" and that she was "generally a credible witness." In

contrast, the Commission found that the employer's witness was not credible.

A reasonable mind may conclude that Jones' injury was caused by an accident in the course of her employment. The Commission could make this determination based upon the testimony of Jones and the medical records of Dr. Barclay. There is nothing in the records of the other doctors which refutes the Commission's conclusion as to causation, nor do the records of the other doctors contradict Dr. Barclay's assessments.[1] The Commission's decision was based upon substantial and competent evidence.

### IV.

**THE COMMISSION DID NOT ERR IN AWARDING COSTS AND ATTORNEY FEES TO THE EMPLOYEE PURSUANT TO I.C. § 72–210, AND JONES IS ENTITLED TO ATTORNEY FEES ON APPEAL.**

Idaho Code Section 72–210 provides as follows:

> **72–210. Employer's failure to insure liability.**—If an employer fails to secure payment of compensation as required by this act, an injured employee, or one contracting an occupational disease, or his dependents or legal representative in case death results from the injury or disease, may claim compensation under this law and shall be awarded, in addition to compensation, an amount equal to ten per cent (10%) of the total amount of his compensation together with costs, if any, and reasonable attorney fees if he has retained

counsel. [I.C. § 72–210, as added by 1971, ch. 124, § 3, p. 422].

The employer failed to secure payment of compensation as required. No mitigating circumstances which would justify the failure to secure worker's compensation coverage were presented by the employer. In similar cases this Court has awarded attorney fees pursuant to I.C. § 72–210. *See Swenson v. Estate of Craner,* 117 Idaho 57, 785 P.2d 621 (1990), and *Armbrister v. Hanny Custom Farming,* 123 Idaho 31, 844 P.2d 13 (1992). The Commission properly awarded Jones costs and attorney fees. Similarly, Jones is entitled to costs and attorney fees for this appeal for the same reason pursuant to I.C. § 72–210.

### V.

### CONCLUSION

The decision of the Commission is affirmed. Jones is awarded costs and attorney fees on appeal.

Chief Justice TROUT and Justices SILAK, WALTERS, and KIDWELL, concur.

---

1. The employer argues that the employee is not entitled to benefits after April 12, 1996, because her injury was fixed and stable on this date. This argument is based upon a letter from Dr. Waters to Dr. Barclay, dated April 12, 1996, in which Dr. Waters writes: "Her injury clearly appears to be fixed and stable at this point ... I believe at this point she clearly is a candidate for possibly a work hardening program to facilitate her return to work or consider a candidate for vocational rehab training." The language contained in the letter itself undermines the employer's argument. Dr. Waters does not express the opinion that Jones is ready to return to work, but rather that her return to work might be facilitated by a work hardening program. This is consistent with the fact that Dr. Barclay first released her to return to work four months later, in August 1996. It is also consistent with the Commission's findings that she was temporarily disabled (i.e. unable to work) during this time.